# IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
## CIVIL DIVISION

**TAMMY HARGETT, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED**                                      **PLAINTIFF**

v.                          NO. CV - 2016 - 449 (JF)

**REVCLAIMS, LLC;
ST. BERNARD'S HOSPITAL, INC;
ST. BERNARD'S COMMUNITY
HOSPITAL CORPORATION; BAPTIST HEALTH;
WHITE RIVER HEALTH SYSTEMS, INC; and
JOHN DOES 1-100**                                         **DEFENDANT**

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:       RevClaims, LLC**

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brandon W. Lacy                 Jeff Scriber
Wilcox & Lacy, PLC              Jeff Scriber, P.A.
600 S. Main Street              324 S. Main Street
Jonesboro, AR 72401             Jonesboro, AR 72401

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Address of Clerk's Office:                CLERK OF COURT
Courthouse
511 S. Main St.                           By: _____
Jonesboro, AR 72401-2859                      Clerk or Deputy Clerk

                                          Date: 01 07 2016

EXHIBIT "B"

IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
CIVIL DISTRICT

2016 JUL -7 PM 4: 41

CLERK OF CIRCUIT COURT

TAMMY HARGETT, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED                                                    **PLAINTIFF**

VS.                           CASE NO. CV-2016-449

REVCLAIMS, LLC;
ST. BERNARD'S HOSPITAL, INC;
ST. BERNARD'S COMMUNITY
HOSPITAL CORPORATION; BAPTIST HEALTH;
WHITE RIVER HEALTH SYSTEM, INC.; and
JOHN DOES 1-100                                              **DEFENDANTS**

## CLASS ACTION COMPLAINT

Comes now Plaintiff, Tammy Hargett, Individually and on Behalf of All Others

Similarly Situated, by and through her undersigned attorneys, Wilcox & Lacy, PLC and

Jeff Scriber, P.A., and for their Class Action Complaint against Defendants, RevClaims,

LLC, St. Bernard's Hospital, Inc., St. Bernard's Community Hospital, Inc., Baptist Health,

White River Health System, Inc., and John Does 1-100, states and alleges the following:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is an individual resident of Craighead County, Arkansas.

2.     Defendant RevClaims, LLC (hereinafter "RevClaims") is a foreign limited

liability company with a principal place of business in a state other than Arkansas.

RevClaims's registered agent for service of legal process is The Corporation Company,

124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

3.     Defendant St. Bernard's Hospital, Inc. (hereinafter "St. Bernard's") is an Arkansas corporation with a principal place of business in Arkansas. St. Bernard's registered agent for service of legal process is Ralph W. Waddell, 225 East Jackson, Jonesboro, AR 72401.

4.     Defendant St. Bernard's Community Hospital, Inc. (hereinafter "CrossRidge") is an Arkansas corporation with a principal place of business in Arkansas. CrossRidge's registered agent for service of legal process is Ralph Waddell, 310 South Falls Blvd., Wynne, AR 72396.

5.     Defendant Baptist Health is an Arkansas corporation with a principal place of business in Arkansas. Baptist Health's registered agent for service of legal process is Troy Wells, 9601 Baptist Health Drive, Little Rock, AR 72205.

6.     Defendant White River Health System, Inc. is an Arkansas corporation with a principal place of business in Arkansas. White River Health System, Inc.'s registered agent for service of legal process is Gary Bebow, 1710 Harrison Street, Batesville, AR 72501.

7.     Defendants John Does 1-100 are hospitals, medical centers and clinics, physician groups, nursing homes, residential care facilities, assisted living centers, physicians, and any other medical care provider doing business in the state of Arkansas which has a provider agreement with Arkansas Medicaid for reimbursement for services and on whose behalf RevClaims has performed services as a collection agent that has resulted in bills and or liens for services provided to Medicaid-eligible patients being submitted to and/or collected from the patient directly in lieu of seeking reimbursement

2

from Arkansas Medicaid.  The identities of all such individuals and/or entities are unknown at this time.  Pursuant to Ark. Code Ann. § 16-56-125 and the Affidavit attached hereto as Exhibit 1, when the identity of these individuals or entities is discovered, this pleading will be appropriately amended.

8.     This Court has subject matter jurisdiction over this action due to the amount and type of relief sought and because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

10.     This Court has personal jurisdiction over the Defendants pursuant to Ark. Code Ann. § 16-4-101 as all Defendants have had more than minimum contacts with the State of Arkansas and have availed themselves of the privilege of conducting in business in this State.  In addition, as explained below, Defendants have committed affirmative acts within the State of Arkansas which give rise to civil liability.

11.     Venue is appropriate in this forum pursuant to Ark. Code Ann. § 16-55-213 because of the residence of the Plaintiff and because the substantial part of the events giving rise to the Plaintiff's claims occurred in this county.

## GENERAL ALLEGATIONS

### A.  Tammy Hargett's Motor Vehicle Collision

12.     Tammy Hargett was involved in a motor vehicle collision in Craighead County, Arkansas on July 27, 2015.  The driver of the at-fault vehicle, Helen Williams, was a resident of the State of Arkansas.

13.     Tammy Hargett suffered, *inter alia,* neck and lower back injuries in the collision.  At the direction of law enforcement and the emergency personnel at the scene, Ms. Hargett was transported to St. Bernard's for evaluation and treatment of her injuries.

14.     Tammy Hargett was, at all times relevant to this suit, an Arkansas Medicaid recipient.

15.     Upon admission to St. Bernard's, and as a condition of Tammy Hargett's admission to St. Bernard's, St. Bernard's was assigned all rights belonging to Ms. Hargett as an Arkansas Medicaid beneficiary.  This included an assignment of benefits authorizing St. Bernard's to bill Medicaid directly and to receive direct reimbursement from Medicaid for medical services provided to Ms. Hargett.

16.     The "standard" charges for the treatment provided to Tammy Hargett at St. Bernard's, without reducing the amount as required by The Med's contract with Arkansas Medicaid, totaled $1,597.00.

17.     St. Bernard's contracted with RevClaims for the collection of this account.

18.     Following her release from treatment, Tammy Hargett pursued a claim against the at-fault driver responsible for the motor vehicle collision, and her liability insurer, State Farm.  Ultimately, State Farm offered a confidential amount to settle Ms. Hargett's tort claim against its insured.

19.     St. Bernard's and RevClaims filed and asserted a lien for the full amount of its bill, $1,597.00, and notified Tammy Hargett, through her counsel, of their intent to assert the lien against Ms. Hargett.  St. Bernard's did not bill these services to Arkansas Medicaid for payment.

4

20.    St. Bernard's was advised that Tammy Hargett is a Medicaid recipient and were instructed to bill Arkansas Medicaid for reimbursement for the medical services provided. *See* Exhibit 2.

21.    In response, RevClaims advised Tammy Hargett's counsel that, in order to collect the full amount of St. Bernard's bill, it would not bill Medicaid for this treatment, and that it would pursue the option of filing a lien on Ms. Hargett's third-party claim against the tortfeasor instead. *See* Exhibit 3.

### B.    RevClaims's Collection Efforts Throughout The State of Arkansas

22.    RevClaims is a nationwide collection agency for hospitals and health systems, community hospitals, and trauma centers which claims to assist these medical care providers in boosting revenue and reducing accounts receivable days by increasing injury claims recoveries. RevClaims has been hired by each of the Defendant medical care providers herein for that precise purpose.

23.    To perform these services, RevClaims holds itself out as having a staff team that includes attorneys and paralegals who understand the nuances of state and federal law, file appropriate liens, and negotiate on clients' behalf. RevClaims likewise holds itself out as having on staff insurance professionals and compliance professionals who understand the intricacies of third-party reimbursement and ensure that its clients are complaint with Medicaid regulations.

24.    RevClaims boasts of having an 86% recovery rate for its clients for charges for which liens are filed.

5

25.     RevClaims's collection procedure specifically targets victims of automobile collisions and other victims of personal injuries for which third-parties are liable. Due to the existence of potential third-party payor sources, such victims are lucrative sources for collections, as RevClaims and the providers on whose behalves they are acting can collect funds which far exceed the providers' regular negotiated reimbursement rates.

26.     The overwhelming majority of healthcare providers' collections are from health insurance networks, Medicare, or Medicaid. All of these sources have contractually negotiated rates for services, and, regardless of the source, the contractually negotiated rate is far below the "standard" charge for services provided.

27.     Consequently, in an effort to boost collections, RevClaims targets patients for whom third-party payor sources are available, in order to collect the "standard"—or inflated—bill for the exact same services which would lead to a greatly reduced payment if the bill were submitted to the insurer, Medicare, or Medicaid for payment.

28.     For purposes of this lawsuit, this practice of attempting to collect the "standard"—or inflated—bill for Medicaid-eligible services provided to Medicaid-eligible patients is known as "balance billing" or "substituted billing." Under Arkansas law, this practice is illegal.

### C. The Arkansas Medicaid Program

29.     Title XIX of the Social Security Act created a joint Federal-State medical assistance program commonly referred to as Medicaid. Ark. Code Ann. § 20-77-107 authorizes the Arkansas Department of Human Services to establish a Medicaid program

6

in Arkansas. The Medicaid program provides necessary medical services to eligible persons who would not be able to pay for such services.

30. The Arkansas General Assembly has enacted statutes to implement the Medicaid program in Arkansas. It is the stated intent of the General Assembly that the Medicaid program is intended to be supplemental to other potential sources of payment which are or may be available to pay for the cost of medical care delivered to the beneficiaries.

31. Thus, the Arkansas legislature enacted statutes to allow the State of Arkansas to seek reimbursement from third party sources after Medicaid benefits have been paid to medical care providers.

32. The Arkansas statutes specifically prevent the healthcare provider from circumventing this reimbursement process and seeking a claim for its full bill directly from the third party. Ark. Code Ann. § 20-77-104(a) states "it is the specific intent of this section... to prohibit any provider of medical services who participates in the Arkansas Medicaid program to bill or receive payment from any Medicaid-eligible person, his or her spouse, relative, guardian, or any other prospective payee for services or considerations for which payment is either payable in full or has been paid in full by the program."

33. Further, Ark. Code Ann. § 20-77-104(c) states "it is the intent of this section... to prohibit any payment by any Medicaid-eligible person or his or her payee in excess of the rate or fee for service that the medical services provider has agreed to

7

accept as payment in full as evidenced by written agreement or contract to participate in the program."

34.    St. Bernard's, CrossRidge, Baptist Health, and White River Health System, Inc., as well as their subsidiaries and affiliates, have each entered into a contract to participate in the Arkansas Medicaid Assistance Program in which they have agreed to comply with the applicable Arkansas statutes with respect to ensuring that Medicaid beneficiaries are not billed directly for Medicaid-covered services and that the beneficiaries are not charged in excess of the rate agreed to by Medicaid for the medical services provided.

35.    As administered in Arkansas, the Medicaid statutes, provider agreements, and Contracts for Participation implement a system whereby medical care providers are required to submit bills for covered services to Medicaid for reimbursement. Reimbursement is based upon the contractually agreed-upon rate which, in most circumstances, is less than the full charge actually billed for the service provided by the healthcare provider.

36.    Once Medicaid has paid the provider for the service, Medicaid has a right of reimbursement against any third party liability insurance carriers or other "health insurers" as set forth in Ark. Code Ann. § 20-77-301, *et seq.* In fact, automobile liability insurance carriers are specifically defined as "health insurers" for purposes of this section. *See* Ark. Code Ann. § 20-77-306(a)(1)(A).

37.    Nothing in the applicable statutes, the provider manuals, or the Contract to Participate in the Medicaid program permit healthcare providers such as Defendants or

their collection agents acting on their behalf to circumvent this process and seek a claim for reimbursement directly from the "health insurer."

38.    In fact, St. Bernard's, CrossRidge, Baptist Health, and White River Health System, Inc., as well as their subsidiaries and affiliates, have each entered into a provider agreement with Arkansas Medicaid in which each of these Defendants has specifically agreed "to accept payment from Medicaid as payment in full for a covered service, and to make no additional charges to the beneficiary or accept any additional payment from the beneficiary except cost share (co-pay or deductible amounts) so designated [or established] by the Medicaid Program." *See* Exhibits 4-11.

39.  ,  Thus, to ensure this statutory scheme is followed, and to prevent healthcare providers from billing charges to Medicaid-eligible patients for charges in excess of that to which they would be entitled to receive from Medicaid, providers are required to submit all bills to Medicaid for payment, and then assign to Medicaid their right to payment or reimbursement from third party sources so that Medicaid can recover its payment.

40.    The only possible reason the Defendants would desire to circumvent the required Medicaid billing process is to avoid the contracted rate St. Bernard's, CrossRidge, Baptist Health, and White River Health Systems, Inc. agreed to accept from Medicaid for the services provided to Medicaid beneficiaries such as the Plaintiff and, rather than accepting the contracted rate from Medicaid, seeking to recover the full amount for the charged service from the patient by filing a lien on the beneficiary's claim against the third party and his/her liability insurance carrier.

41.     A lien filed by RevClaims and Defendants herein, such as the one filed against Tammy Hargett, is a bill to receive payment from a Medicaid-eligible person for services for which payment is payable by the Medicaid program.

42.     A lien filed by RevClaims and Defendants herein, such as the one filed against Tammy Hargett, is a claim created by application of Arkansas statute, Ark. Code Ann. § 18-46-101, *et. seq.* This statutory framework gives rise to a lien "for the value of the service rendered and to be rendered by the practitioner, nurse, hospital, or ambulance service provided <u>to a patient</u> . . . for the relief and cure of an injury suffered through the fault or neglect of someone other than the patient . . . on any claim, right of action, and money <u>to which the patient is entitled</u> because of that injury . . . " Ark. Code Ann. § 186-46-104. Thus, the statute creates a lien <u>against the patient</u> and the patient's cause of action. The lien, therefore, is not an effort to pursue payment from a third party, but rather an effort to recover directly from the patient and Medicaid beneficiary by impairing the beneficiary's rights.

43.     RevClaims' collections practices with respect to Medicaid-eligible beneficiaries constitutes a policy and practice by RevClaims and the providers whom it represents to disregard applicable Arkansas law with respect to billing Medicaid for Medicaid-eligible services provided to Medicaid beneficiaries.

44.     Instead, RevClaims and Defendants herein, in circumstances involving victims of motor vehicle collisions for which payment from a third party liability carrier is apparent, insist upon filing statutory liens against the Medicaid beneficiaries in order to recover the "standard"—or inflated—amounts for the charged services, which greatly

10

exceed the negotiated rates the Defendant healthcare providers have agreed to accept from Medicaid.

45.     As set forth below, this policy and practice by RevClaims and Defendants herein not only violates the Arkansas Medicaid statutes, but constitutes numerous violations of Arkansas law.

## CLASS ACTION ALLEGATIONS

46.     Pursuant to Ark. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated.  This action satisfies the Ark. R. Civ. P. 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and the Rule 23(b) requirements of predominance and superiority.

47.     The proposed class which Plaintiff seeks to represent is defined as follows:

All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Defendants herein for injuries sustained in an incident for which a third party was potentially liable whose subsequent claim against that third party was impaired by the filing of a lien for the full charge of the services.  Excluded from the class are: (1) All persons who received no monies from any third party against whom their liability claims were pursued, either through settlement, judgment, or otherwise; (2) All persons whose bills from The Med were ultimately paid by Arkansas Medicaid; (3) RevClaims, St. Bernard's, CrossRidge, Baptist Health, White River Health Systems, Inc. and its affiliates, officers, directors, agents, and employees; (4)  Members of the judiciary and their staff to whom this action is assigned; and (5) Plaintiff's counsel.

48.     The members of this class are so numerous that joinder of all members is impracticable.  Plaintiff reasonably believes that hundreds, if not thousands, of people geographically disbursed across Arkansas have been damaged by Defendants' actions. The names and addresses of the members of the class are identifiable through records



maintained by the Defendants, and Class Members may be notified of the pendency of this action by mail, published, and/or electronic notice.

49.    Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members.  The questions of law and fact common to the class, include, but are not limited to:

a.    Whether Arkansas law permits the Defendants to assert liens against Medicaid-eligible beneficiaries, in lieu of submitting bills for Medicaid-covered services to Arkansas Medicaid;

b.    Whether the Defendants' efforts to enforce statutory liens against Medicaid beneficiaries' cause(s) of action against third parties constitutes an effort to bill and receive payment from Medicaid eligible persons as prohibited by Ark. Code Ann. § 20-77-104;

c.    Whether the Defendants' efforts to enforce statutory liens against the Medicaid beneficiaries' cause(s) of action against third parties constitutes an effort to recover payment from a Medicaid-eligible person in excess of the rate for services that they have agreed to accept as payment in full from Arkansas Medicaid;

d.    Whether Defendants have been unjustly enriched by their policies and practices by retaining money that should not have been received from the Plaintiff and other Class Members as described herein;

e.    Whether Defendants have converted funds to which Medicaid beneficiaries are entitled to possess;

f.     Whether Defendants breached their contract with Arkansas Medicaid thus depriving Arkansas Medicaid beneficiaries of intended contractual benefits;

g.     Whether Defendants conspired to violate Arkansas law and impair Arkansas Medicaid beneficiaries' statutory legal rights through its practice and policy of enforcing statutory liens against Medicaid beneficiaries for Medicaid services in lieu of submitting bills for these services to Medicaid; and

h.     Whether Plaintiff or other Class Members have been damaged by the Defendants' breaches, as alleged herein and, if so:

1.     What is the nature and extent of those damages; and

2.     What relief should be awarded to Plaintiff and other Class Members.

50.     Plaintiff's claims are typical of the claims of all Class Members, as they are all similarly affected by Defendants' custom and practice of unlawful and unjust conduct, and their claims are based on such conduct. Further, Plaintiff's claims are typical of the claims of all Class Members because her claims arise from the same underlying facts and are based on the same factual and legal theories. Plaintiff is no different in any material respect from any other member of the class.

51.     Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Plaintiff's interests do not conflict with the interest of the class she seeks to represent. Plaintiff has retained counsel who are competent and experienced in class action litigation, as well as including insurance and healthcare-related cases. Plaintiff and her counsel will prosecute this action vigorously.

13

52.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Joining all Class Members in one action is impracticable and prosecuting individual actions is not feasible.  The size of the individual claims is likely not large enough to justify filing a separate action for each claim.  For many, if not most Class Members, the class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice.  Even if Class Members had the resources to pursue individual litigation, that method would be unduly burdensome to the Courts in which such cases would proceed.  Individual litigation exacerbates the delay and increases the expense for all parties, as well as the Court system.  Moreover, individual litigation could result in inconsistent adjudications of common issues of law and fact.

53.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigation parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of the Plaintiff and Class Members.  These benefits would result from the comprehensive and efficient supervision of the litigation by a single Court.

54.     Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief for corresponding declaratory relief is appropriate respecting the class as a whole.

## COUNT I - VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

55.     Paragraphs 1-54 are incorporated herein by reference as set forth word for word.

56.     Plaintiff and Class Members are "persons" entitled to protection under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et. seq.*

57.     Defendants, through their agents and employees, have engaged in unconscionable and false deceptive acts and practices of business as described above. Despite being aware that Plaintiff is a Medicaid-eligible beneficiary, the Defendants have refused to submit their bills for services provided to Medicaid for payment, instead insisting upon filing a lien encumbering the Plaintiff's and Class Members' cause(s) of action against third party(-ies) in order to recover a fee in excess of the agreed-upon rate which Defendants agreed to receive from Arkansas Medicaid.

58.     Defendants, through their agents and employees, have engaged in unconscionable and false deceptive acts and practices of business as described above. Despite being aware that Plaintiff is a Medicaid-eligible beneficiary, the Defendants have refused to submit their bills for services provided to Medicaid for payment, instead insisting upon filing a lien encumbering the Plaintiff's and Class Members' cause(s) of action against  third party(-ies) in order to recover a fee from a Medicaid-eligible beneficiary directly.

59.     Defendants knowingly engaged in a scheme and artifice to defraud the Plaintiff and Class Members, made untrue statements of facts, omitted to state material



15

facts necessary in order to make previous factual statements, in light of the circumstances in which they were made, not misleading, and engaged in acts and practices in courses of business which operated as a fraud and deceit upon the Plaintiff and Class Members.  The actions are unconscionable, false, and deceptive in the practice of business and, thus, they are in violation of Ark. Code Ann. § 4-88-107.

60.     Defendants' conduct proximately caused Plaintiff and Class Members to suffer damages as set forth herein, as well as reasonable attorney's fees and costs of litigation pursuant to Ark. Code Ann. § 4-88-113(f).

61.     The improper actions of the Defendants have caused the Plaintiff and Class Members to suffer damages in excess of that required for federal diversity jurisdiction.

## COUNT II - UNJUST ENRICHMENT

62.   Paragraphs 1-61 are incorporated herein by reference as set forth word for word.

63.     Defendants' conduct, as described above and as more specifically alleged in this count, also constitutes unjust enrichment, for which Plaintiff and other Class Members are entitled to pursue equitable remedies in accordance with Arkansas law.

64.     Defendants have encumbered all funds from the Plaintiff and other Class Members for services which should have been billed to Arkansas Medicaid and for which Defendants should have accepted the agreed negotiated rate from Arkansas Medicaid.  In improperly enforcing their statutory lien against Plaintiff and other Class Members' cause(s) of action against liable third parties, the Defendants received payment in excess

16

of that to which they were legally entitled as a result of their Medicaid provider agreements.

65. Defendants' actions were unjust and inequitable in that they received far more than that which they were entitled to receive for their services as required by their contract with Arkansas Medicaid, the Medicaid Provider Manuals, and Arkansas statutes and regulations.

66. Defendants' actions were unjust and inequitable in that they failed to disclose to Plaintiff and other Class Members that they were required to bill Medicaid for the discounted rate for the services provided to these Medicaid beneficiaries for these covered services.

67. Defendants' actions were unjust and inequitable in that Defendants concealed from Plaintiff and other Class Members that they were receiving more than they were legally permitted to receive by enforcing their statutory lien instead of billing Arkansas Medicaid for the services.

68. Defendants' actions were unjust and inequitable in that Defendants concealed from Plaintiff and other Class Members that they were not permitted to bill Medicaid beneficiaries directly for Defendants' services.

69. Defendants' actions were unjust and inequitable and the Defendants owed a fiduciary duty to, and/or had a special relationship with, Plaintiff and other Class Members.

70. As a result of Defendants' unjust and inequitable actions, Defendants were unjustly enriched by receiving something of value to which they were not entitled. More

17

specifically, Defendants retained, and had the beneficial use of, money that Plaintiff and other Class Members were entitled and should have received in payment of their third party claims.

71.    As a result of their unjust and inequitable actions, Defendants were unjustly enriched by receiving money under such circumstances that, in equity and good conscious, they ought not retained.

72.    In light of the foregoing, Plaintiff and other Class Members are entitled to restitution and other equitable relief.

## COUNT III - CONVERSION

73.    Paragraphs 1-72 are incorporated herein by reference as set forth word for word.

74.    Plaintiff and Class Members were entitled to receive and possess funds from third parties, including third party liability carriers, resulting from liability claims arising from incidents in which the Plaintiff and Class Members suffered personal injury as a result.

75.    The Defendants intentionally took and exercised dominion and control over the funds to which the Plaintiff and Class Members were entitled to recover in violation of the Plaintiff's and Class Members' rights.

76.    The Defendants' actions as described above constitutes a conversion of the funds to which the Plaintiff and Class Members were entitled to recover and possess.



77.     As a result of the Defendants' unlawful conversion of Plaintiff's funds, the Plaintiff and Class Members have been damaged in an amount more fully set forth below and for which the Defendants are jointly and severally liable.

## COUNT IV – BREACH OF CONTRACT AS THIRD PARTY BENEFICIARY

78.     Paragraphs 1-77 are incorporated herein by reference as set forth word for word.

79.     Defendants, including their subsidiaries and affiliates, and Arkansas Medicaid entered into contracts attached hereto as Exhibit 4-11. The terms of these contracts require that Defendants comply with all billing rules and regulations as outlined in the applicable provider manuals, Arkansas Medicaid statutes, and other laws implementing the Medicaid program in the State of Arkansas.

80.     The contracts, which incorporate by reference all applicable Medicaid laws and regulations implementing the Medicaid program in Arkansas, clearly are intended to benefit Medicaid recipients such as Plaintiff and other Class Members under the terms of the contract.

81.     The contracts required Defendants to bill all Medicaid covered services for Medicaid-eligible individuals such as Plaintiff and other Class Members to Medicaid for payment in lieu of billing the patient directly for its charges or billing any charges in excess of the agreed upon rate between Defendants and Medicaid for these services.

82.     Plaintiff and the Class Members did what the contracts required of them by assigning all rights belonging to them as Medicaid-eligible beneficiaries to Defendants in exchange for Defendants providing services to her.

19

83.     Defendants, acting through their agent RevClaims, did not do what the contracts required of them by, instead of sending their bills for services provided to Medicaid for payment, filing a lien which encumbered Plaintiff's and the Class Members' third party liability claims and ultimately acted as a bill directly sent to them for services provided to them in an amount in excess of that which was agreed upon between Defendants and Medicaid for these Medicaid-eligible services.

84.     Defendants, in contracting with RevClaims to perform their bill collection against Plaintiff and Class Members, assigned their contractual rights and responsibilities under their Medicaid contracts to RevClaims.

85.     As such, Defendants have breached the contract with Arkansas Medicaid and have caused the Plaintiff and other Class Members damages as a result.

86.     In addition, in the performance of contractual obligations, Arkansas law implies a promise between the parties that they will act in good faith and deal fairly in performing and enforcing their obligations under the contract.  Stated another way, the law implies a promise between the parties that they will not do anything to prevent, hinder, or delay the performance of the contract.

87.     In breaching their contracts with Arkansas Medicaid, Defendants, through their agent RevClaims, have taken affirmative actions to prevent, hinder, and delay the performance of their contracts to the detriment of third party beneficiaries such as Plaintiff and the Class Members.  Such actions are additional evidence of Defendants' breach of the contract.

20

88.     As a result of the Defendants' unlawful breach of contract, the Plaintiff and the Class Members, as third party beneficiaries, have been damaged for an amount more fully set forth below and for which the Defendants are jointly and severally liable.

## COUNT V - CIVIL CONSPIRACY

89.     Paragraphs 1-88 are incorporated herein by reference as set forth word for word.

90.     Defendants entered into an agreement whereby they conspired to illegally and improperly enforce statutory liens in order to recover amounts in excess of the agreed-upon discounted Medicaid rate directly from Medicaid-eligible beneficiaries in lieu of submitting the bills to Medicaid for payment.

91.     The Defendants concealed material aspects of their scheme and agreement from the Plaintiff and other class members.

92.     The agreement between the Defendants constitutes a civil conspiracy under Arkansas law and was conducted for the purpose of illegally, improperly, deceptively, and fraudulently collecting amounts in excess of that to which they had agreed to receive for Medicaid-eligible services provided to Medicaid-eligible beneficiaries directly from its patients in lieu of submitting the bills to Arkansas Medicaid.

93.·    Defendants engaged in acts which were improper and conducted in furtherance of a civil conspiracy to illegally and improperly to obtain monies from the Plaintiff and the Class Members.

21

94. The agreement between the Defendants was unlawful and carried out for an unlawful purpose resulting in direct monetary damage to the Plaintiff and the Class Members.

95. The agreement/conspiracy and the actions taken by the Defendants in carrying out the unlawful purpose of the conspiracy were conducted maliciously, willfully, and wantonly for the purpose of intentionally harming the Plaintiff and the Class Members.

96. As a result of the improper actions of the Defendants, the Plaintiff and the Class Members have been financially harmed in an amount for which the Defendants are jointly and severally liable.

## COUNT VI - ACTING IN CONCERT

97. Paragraphs 1-96 are incorporated herein by reference as set forth word for word.

98. The Defendants entered into a conscious agreement whereby they conspired to illegally and improperly enforce statutory liens against Plaintiffs and other Class Members' third party causes of action in order to recover directly from the Plaintiff and other Class Members' amounts in excess of that to which the Defendants would be entitled to receive by sending the bill for services to Medicaid.

99. The Defendants entered into a conscious agreement to pursue a common plan or design to illegally, improperly, deceptively, and fraudulently enforce statutory liens against Plaintiffs and other Class Members' third party causes of action in order to recover directly from the Plaintiff and other Class Members' amounts in excess of that to

which the Defendants would be entitled to receive by sending the bill for services to Medicaid.  The actions taken in furtherance of this common plan and design were in violation of the Arkansas Deceptive Trade Practices Act.  These actions also constitute conversion and justify relief under the doctrine of unjust enrichment.

100.   Defendants have entered into an agreement to improperly and illegally collect bills directly from its patients who are Medicaid-eligible beneficiaries for amounts in excess of that to which the Defendants had agreed to accept from Arkansas Medicaid.

101.   The Defendants acted in concert and each actively took part in the conscious agreement to pursue a common plan and design and engaged in acts which were improper and conducted in the furtherance of this common plan and design to illegally and improperly recover money directly from the Plaintiff and Class Members in excess of that to which it could recover from Arkansas Medicaid.

102.   The conscious agreement to pursue a common plan and design entered into between the Defendants was unlawful and carried out for an unlawful purpose resulting in direct monetary damage to the Plaintiff and the Class Members.

103.   The conscious agreement to pursue a common plan and design entered into between the Defendants and the actions taken by the Defendants in carrying out the unlawful purpose of the common plan and design were conducted maliciously, willfully, and wantonly for the purpose of intentionally harming Plaintiff.

104.   As a result of the improper actions of the Defendants, Plaintiff and Class Members have been harmed an amount for which the Defendants are jointly and severally liable.

23

WHEREFORE, Plaintiff Tammy Hargett, Individually and On Behalf of Other Similar Situated, request that the Court grant the following relief:

a.       Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure;

b.       Appoint Plaintiff and Plaintiff's counsel to represent the class;

c.       Declare that the Defendants have violated the Arkansas Deceptive Trade Practices Act;

d.       Declare that the Defendants have been unjustly enriched as a result of their wrongful conduct;

e.       Declare that the Defendants have improperly converted funds belonging to the Plaintiff and the Class;

f.       Declare that the Defendants have engaged in a civil conspiracy and acted in concert in committing the actions above;

g.       Award the Class damages in an amount equal to all amounts improperly billed to the Class and recovered through filing liens;

h.       Award the Class pre-judgment and post-judgment interest;

i.       Enjoin the Defendants from engaging in the unlawful and unjust conduct complained of herein;

j.       Award the Class reasonable attorney's fees and costs; and

k.       Award the Class any and all other additional relief to which the Plaintiff and other Class Members may be entitled.

Respectfully Submitted,

Brandon W. Lacy #03098
WILCOX & LACY, PLC
600 S. Main Street
Jonesboro, Arkansas 72401
870-931-3101

-and-

24

Jeffery O. Scriber, #2006526
JEFF SCRIBER, P.A.
324 S. Main Street
Jonesboro, AR 72401
870-336-0155

Attorneys for Plaintiff

By: _____
Brandon W. Lacy #03098