# TRAUB LIEBERMAN
# STRAUS & SHREWSBERRY LLP

NEW YORK | NEW JERSEY | FLORIDA | CHICAGO | LOS ANGELES

303 West Madison
Suite 1200
Chicago, Illinois 60606

Telephone (312) 332-3900
Facsimile  (312) 332-3908
www.traublieberman.com

BBASSETT@TRAUBLIEBERMAN.COM

October 21, 2016

**VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED:**
**AND REGULAR MAIL: 7010 1670 0002 5359 2037**
Mr. Brad Williams
RevClaims, LLC
2510 Lakeland Terrace
Suite 100
Jackson, MS 39216-4717

RE:   *Pledger v. RevClaims, LLC*
Case No.         :   02-CV-2016-901926 (County of Mobile, AL)
Policy No.       :   LHR751124
Claim No.        :   703-98112
Our File No.     :   122.0250

Dear Mr. Williams:

This firm is coverage counsel to Landmark American Insurance Company ("Landmark") in connection with the above-referenced lawsuit (the "Pledger lawsuit"). Landmark has received correspondence indicating that coverage is sought by RevClaims, LLC ("RevClaims") in connection with a lawsuit filed by Alicia Pledger on September 14, 2016, in the Circuit Court of Mobile County, Alabama, as case no. 02-CV-2016-901926. Landmark is currently defending RevClaims in a separate lawsuit filed by Elizabeth Wiggins in the Circuit Court of Mobile County, Alabama, in March 2016 (the "Wiggins lawsuit"), under Landmark Policy No. LHR751124, in effect from May 1, 2015 to May 1, 2016, and subject to limits of $2,000,000 per claim and in the aggregate, and a per-claim deductible of $25,000 (the "Landmark Policy"). We understand that RevClaims seeks coverage in connection with the Pledger Lawsuit under the Landmark Policy.

The purpose of this letter is to advise you of certain coverage issues that may operate to limit or otherwise preclude coverage for this matter, and to reserve Landmark's rights with respect to such issues. Subject to and without waiving its reservation of rights, Landmark has agreed to provide a defense to RevClaims in this matter. Landmark understands that RevClaims retained Scott Stevens of Starnes Davis Florie LLP as independent counsel to defend it in this matter, and Landmark agrees to RevClaims' selection of counsel.

EXHIBIT "G"

Mr. Brad Williams
October 21, 2016
Page 2 of 6

Please understand that Landmark's position is based on the information provided to date. Landmark reserves the right to reconsider its position and withdraw its defense upon receipt of additional information. Further, it is Landmark's position that the insurance company that issued a policy to RevClaims after the expiration of the Landmark Policy should be defending RevClaims in the Pledger lawsuit. Landmark reserves the right to seek reimbursement from any other insurers that may afford coverage for the Pledger lawsuit.

## I.     FACTUAL BACKGROUND

In March 2016, Elizabeth Wiggins filed a complaint against MIMC and RevClaims (collectively, "Defendants"). Wiggins alleges that after being involved in a car accident on September 1, 2015, she was treated by MIMC. (Wiggins Compl., ¶ 13.) She further alleges that, despite the fact that Wiggins had health insurance with Blue Cross Blue Shield ("BCBS"), Defendants failed to bill BCBS and instead MIMC instructed RevClaims to file a lien "so they could claim the full amount of the medical charges." (*Id.*, ¶ 14.) Further, according to Wiggins, Defendants refused to provide her a UB-04 to prevent her from submitting her medical bills to BCBS. (*Id.*, ¶ 15.) Her nine-count complaint alleges: third-party beneficiary (Count I); specific performance (Count II); declaratory judgment (Count III); unjust enrichment (Count IV); tortious interference with a contract (Count V); civil conspiracy (Count VI); injunction (Count VII); negligence (Count VIII); and wantonness (Count IX). Currently, Landmark is defending RevClaims in the Wiggins lawsuit under the Landmark Policy.

On September 14, 2016 – after the expiration of the Landmark Policy – Alicia Pledger filed a complaint against MIMC and RevClaims. Pledger alleges that she was treated by MIMC as a result of a car accident on September 13, 2015. (Pledger Compl., ¶¶ 7, 29.) According to Pledger's complaint, the Defendants filed a hospital lien against her on October 9, 2015, for $8,658.01, the full amount of her charges, and on December 20, 2015, State Farm paid Defendants $5,000 under the Medical Payment portion of Pledger's State Farm automobile policy. (*Id.*, ¶¶ 22–24.) She further alleges, upon information and belief, that in January 2016, Defendants submitted the full amount of the charges to BCBS, Pledger's health insurance provider, and that on February 18, 2016, BCBS paid Defendants the negotiated reimbursement rate of $1,761.46. According to Pledger, notwithstanding payment from State Farm and BCBS, Defendants continue to assert a hospital lien for the full amount against her. (*Id.*, ¶ 25.) Pledger's three-count complaint alleges: third-party beneficiary (Count I); civil conspiracy (Count II); and fraud (Count III).

## II.    THE LANDMARK POLICY

The Landmark Policy is a "claims-made and reported" professional liability insurance policy issued to Brad Williams, Attorney at Law PLLC and RevClaims, LLC as policy number LHR751124, with effective dates of May 1, 2015 to May 1, 2016, and a retroactive date of August 28, 2012. The Landmark Policy is subject to limits of $2,000,000 per claim and in the aggregate, and a per-claim deductible of $25,000. The Landmark Policy was not renewed after it expired on May 1, 2016.

Mr. Brad Williams
October 21, 2016
Page 3 of 6

The Insuring Agreement of the Landmark Policy provides, in pertinent part, the following:

### A. Covered Services

The Company will pay on behalf of the Insured, as shown in the Declaration, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, or **Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render **Professional Services** as a Lawyer, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period** * * *

The Policy Limits section of the Insuring Agreement in the Landmark Policy provides, in pertinent part, the following:

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy. All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** and all such **Claims** shall be subject to the same Each Claim Limit of Liability during that **Policy Period**.

The Pledger lawsuit is a claim that was first made against RevClaims on or after September 14, 2016, and therefore it was not first made against RevClaims during the Landmark Policy period.

Pursuant to the Insuring Agreement, the claim in the Pledger lawsuit was made during the Landmark Policy period only if the Pledger lawsuit and the Wiggins lawsuit "aris[e] out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions" such that they qualify as a single "Claim" under the Policy. The Pledger lawsuit and the Wiggins lawsuit are brought by different parties, arise out of separate occurrences of wrongdoing and resulted in different injuries. Although the claims arise out of the same "type" of wrongdoing, it does not necessarily follow that the claims arise out of a series of *related* acts, especially where, as is the case here, the claims lack any other causal or logical relation to one another. These claims involve separate lawsuits and separate losses to separate claimants, allege separate acts of wrongdoing that occurred at different times, and involve independent business decisions by RevClaims. Given these differences, Landmark reserves the right to assert that the Pledger claim is not "related" to the Wiggins claim such that they qualify as a single "Claim" under the Policy.

Mr. Brad Williams
October 21, 2016
Page 4 of 6

Landmark further reserves all rights against RevClaims' subsequent insurer as that insurer should provide a defense to RevClaims.

The Insuring Agreement of the Landmark Policy also states that coverage is only available for a "negligent" act, error or omission. The Complaint in the Pledger suit contends that RevClaims' conduct was intentional and fraudulent. As such, the Insuring Agreement of the Policy may not be satisfied, and Landmark reserves rights accordingly.

The Landmark Policy excludes coverage for any claim based upon or arising out of "actual dishonest, fraudulent, criminal, intentionally wrongful or malicious act, error, or omission committed by any Insured" if the act is proven by an admission by the Insured or by a finding in a judicial, administrative or arbitration proceeding. Therefore, the Landmark Policy excludes coverage for any fraudulent act, as alleged in Count III of the Pledger Complaint, or as alleged in any other part therein, in the event such allegations are admitted by the insured or proven. Landmark reserves its rights in this regard.

Coverage under the Landmark Policy is also limited to "Damages" and associated "Claim Expenses." The term "Damages" is defined as follows:

> D. "Damages" means monetary judgment, award or settlement, except those for which insurance is prohibited by law. "Damages" does not include punitive or exemplary damages, fines, or amounts that are multiples of any covered "Damages", penalties, or disputed fees, deposits, commissions or charges for goods or services.

To the extent the Pledger lawsuit seeks recovery for punitive damages (*see* requests for relief in Counts II and III in Pledger Compl.), or seeks any other form of damages not included in the definition set forth in the Policy and stated above, those claims are not covered by the Landmark Policy.

The Landmark Policy contains an "Other Insurance" provision under Part IV. Conditions that provides, in pertinent part, the following:

> O. **Other Insurance**
>
> This policy is excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.
>
> * * *

Pursuant to this "other insurance" provision, the Landmark Policy will be rendered excess to any other policy under which coverage is available in connection with the Pledger lawsuit. To the extent RevClaims has not already done so, please immediately notify any other primary, umbrella, or excess liability carriers who may provide coverage in this matter.

Mr. Brad Williams
October 21, 2016
Page 5 of 6

Further, as explained above, the insurance company that issued a policy to RevClaims after the expiration of the Landmark Policy should be defending RevClaims in the Pledger lawsuit. Landmark understands that RevClaims has tendered this matter to that insurer. **Please provide the undersigned with copies of all correspondence from that insurer relating to coverage for this matter.** Landmark's willingness to provide a defense to RevClaims at this time shall not be construed as an admission of coverage under the Landmark Policy, and any payments made by Landmark to defend RevClaims shall not be considered voluntary payments. Landmark reserves the right to seek reimbursement and/or contribution from RevClaims' other insurers for any fees and costs incurred in this matter. Landmark also specifically reserves the right to file a declaratory judgment action and/or withdraw its defense of RevClaims in connection with the Pledger lawsuit.

For the reasons stated herein, Landmark hereby asserts a full and complete reservation of rights under the Landmark Policy. Notwithstanding this reservation, Landmark has agreed to defend RevClaims in the Pledger lawsuit. Landmark understands that RevClaims retained Scott Stevens of Starnes Davis Florie LLP as independent counsel to defend the Pledger Lawsuit. Landmark agrees to defer to RevClaims' selection of Mr. Stevens as defense counsel.

Please note that nothing contained herein, nor any future actions taken by Landmark, should be construed as a waiver of any rights or defenses, whether or not stated herein, which Landmark may possess under its policy and applicable law. It should be understood that any actions taken by Landmark, its agents, representatives or attorneys do not constitute and are not intended as a waiver of any rights or defenses available to Landmark, whether or not stated herein, and shall not estop Landmark from asserting at a later date any rights or defenses, whether or not stated herein, that may be available now or at any point in time.

We trust that you understand Landmark' position as set forth above. If you believe that Landmark is not in possession of all of the facts or has misunderstood the facts, or that Landmark's analysis is in some respect flawed, Landmark stands ready to reevaluate its position upon having such matters called to its attention. However, Landmark's willingness to consider additional information from you shall not be construed as a waiver or estoppel with respect to Landmark's current coverage determination.

Should you have any question regarding the issues and coverage position discussed herein, please do not hesitate to contact me.

Very truly yours,

TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY, LLP

Brian C. Bassett

Mr. Brad Williams
October 21, 2016
Page 6 of 6

cc:    <u>Via E-mail: LHettinger@rsui.com</u>
       Ms. Lindsey Hettinger
       RSUI Group, Inc.

       <u>Via E-mail: ellis.pisciotta@hubinternational.com</u>
       Mr. Ellis Pisciotta
       HUB International Gulf South