IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| ASSOCIATED INDUSTRIES | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
|     Plaintiff/Counterclaim Defendant | ) | No. 3:17-cv-37DPJ-FKB |
| | ) | |
| v. | ) | |
| | ) | |
| BRAD WILLIAMS LLC, REVCLAIMS LLC | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LANDMARK AMERICAN INSURANCE COMPANY | ) | |
| | ) | |
|     Defendant/Counterclaim Plaintiff. | ) | |

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF LANDMARK AMERICAN
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

---

## I.    INTRODUCTORY STATEMENT

Defendant Landmark American Insurance Company ("Landmark") is entitled to summary judgment since the single underlying action filed against the insured Defendant RevClaims, LLC ("RevClaims") during the policy period of Landmark's claims-made professional liability policy is not related to the three different actions filed against RevClaims during the policy period of Plaintiff Associated Industries Insurance Company's ("AIIC") subsequent claims-made professional liability policy for purposes of the related acts provisions in the two policies.  To hold that these four underlying actions are interrelated simply because they involve allegations concerning RevClaims' daily business practices would ignore and abrogate RevClaims' reasonable expectations concerning the potential application of the

1

927467

successive professional liability policies it purchased from Landmark and AIIC. Therefore, Landmark has no coverage obligations as to the three subsequent actions and pursuant to the doctrine of equitable subrogation, is entitled to be reimbursed by AIIC for the costs Landmark has incurred in defending RevClaims in one of those three subsequent actions.

AIIC filed this action seeking a declaratory judgment that Landmark must defend and indemnify RevClaims in all three subsequent actions filed during AIIC's claims-made policy period pursuant to an interrelated wrongful acts provision in AIIC's policy. AIIC asserts that these three subsequent actions are related to the one action filed against RevClaims during Landmark's prior claims-made policy period on the basis that all four actions involve allegations that RevClaims wrongfully sought recovery for medical services from third-parties, and thus, constitute a single claim covered solely under Landmark's claims-made policy.

AIIC's position that it has no coverage obligations for the three subsequent actions filed during its claims-made policy period is without merit.  Distinct claims occurring at different times, for different purposes, involving independent business decisions are not related pursuant to the applicable authorities.  The insured RevClaims' business involves the filing and enforcement of medical liens for medical care providers. The alleged acts at issue in the four underlying actions, however, involve separate business decisions by RevClaims to file liens for distinct amounts. The underlying actions were also filed by four different individuals who received different medical treatment at separate facilities in two states after being injured as a result of different accidents involving different tortfeasors. The severity of the resulting injuries is also different in each case. These actions involve distinct allegations concerning different medical and/or automobile insurers. All allegedly wrongful acts occurred at different times. These distinctions alone establish that the three actions filed during AIIC's subsequent claims-

made policy period are not related to the single action filed during Landmark's prior claims-made policy period.

Adopting AIIC's position would also be contrary to the insured RevClaims' reasonable expectations concerning claims made against it in connection with its daily business during the separate policy periods of the claims-made professional liability policies it purchased from Landmark and AIIC. Under AIIC's approach, its claims-made policy would never respond to any claims made against RevClaims during AIIC's claims-made policy period that involve in any way the daily professional services of RevClaims simply because one action involving RevClaims' daily business was previously filed during Landmark's prior claims-made policy period. AIIC asks this Court to relate all three subsequent actions filed during its policy period to the one action filed during Landmark's prior policy period. This result would transform the four different underlying actions into one claim, leaving only Landmark's policy limit potentially available to respond to all four actions and essentially rendering the AIIC policy RevClaims purchased illusory under the circumstances.

For these reasons, and the additional reasons addressed below, Landmark requests that the Court enter summary judgment denying AIIC's request for a declaratory judgment and finding that Landmark has no coverage obligations for any of the three actions filed during AIIC's subsequent policy period.

Landmark also respectfully requests that, pursuant to its Counterclaim filed under the doctrine of equitable subrogation, this Court direct AIIC to reimburse Landmark for all sums Landmark has incurred defending RevClaims, subject to a reservation of rights, in the one subsequent action filed during AIIC's policy period for which RevClaims sought coverage from Landmark and AIIC.

927467

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Related Acts Provisions of the Policies

This declaratory judgment action involves related acts provisions in AIIC's and Landmark's respective claims-made professional liability policies. *See* [Dkt. 1]. A claims-made policy responds to claims made against an insured during the policy period, regardless of when the insured's actions took place. *See* Jeffrey Jackson, *Claims Made and Occurrence Policies*; *Tail Insurance*, MISS. INS. LAW AND PRAC. §16:2 (2017). Claims-made policies differ from "occurrence" liability policies, which respond to claims against an insured when the insured's actions occurred during the policy period, even if the claim against the insured is made after the policy has expired. *Id*. Claims-made coverage is designed to allow the insurer "to close its books on the policy at the end of a given policy year." *Id*.

Landmark issued a claims-made Professional Liability Policy to Brad Williams Attorney at Law, PLLC and RevClaims, LLC with a May 1, 2015 to May 1, 2016 policy period ("Landmark Policy"). The Landmark Policy has a $2,000,000 each claim and aggregate limit. *See* [Dkt. 10-1], at p. 3/47.

The Landmark Policy includes a Lawyers Professional Liability Coverage Form Claims Made and Reported Basis. *Id*. at p. 5/47. The Insuring Agreement in that form provides, in relevant part:

> The Company will pay on behalf of the Insured as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error, omission, or **Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render **Professional Services** as a lawyer, provided that the:
>
> 1.  **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**.

***

4

> All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy. All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** . . . .

> \*\*\*

*Id*. at p. 5, 6/47.

AIIC issued a Lawyers Professional Liability Insurance Policy (Claims Made and Reported) with a May 1, 2016 to May 1, 2017 policy period to named insured Brad Williams LLC ("AIIC Policy").  *See* [Dkt. 1-1].  RevClaims was added as an insured by endorsement. The AIIC Policy has a $2,000,000 each claim and policy period aggregate limit.  *Id*. at p. 3/46.

The Limits of Liability section in the AIIC Policy includes a Multiple Insureds, Claims and Claimants provision, which states, in relevant part:

> **Claims** alleging, based upon, arising out of or attributable to the same **Wrongful Act(s)** or **Interrelated Wrongful Acts** shall be treated as a single **Claim** regardless of whether made against one or more than one **Insured**.   All such **Claims**, whenever made, shall be considered first made during the **Policy Period**, the Automatic Extended Reporting Period, or Optional Extended Reporting Period, if purchased, in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Interrelated Wrongful Acts** was first made, and all such **Claims** shall be subject to the Limit of Liability and Retention set forth in such Policy.

> \*\*\*

> "**Interrelated Wrongful Acts**" means **Wrongful Acts** that are causally or logically related and include all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the **Claim** or **Claims** alleging such acts involve different claimants, **Insureds** or legal causes of action.

> \*\*\*

*Id*. at p. 14, 19/46.

**B.**     **Summary of the Four Underlying Actions**

**(i.) Action Filed During Landmark's Policy Period – *Wiggins* Action**

Only one of the four underlying actions was filed during Landmark's policy period (May 1, 2015 to May 1, 2016).  Elizabeth Wiggins filed a Complaint in the Circuit Court of Mobile County, Alabama in February 2016 (the "*Wiggins* Action").  *See* [Dkt. 1-8].  Ms. Wiggins filed a First Amended Complaint in arbitration on February 14, 2017, naming RevClaims and various Alabama-based health care providers as defendants.  *See* Exhibit A to Landmark's Motion for Summary Judgment ("Motion").

The *Wiggins* Action arises from a September 1, 2015 motorcycle accident in Alabama. Ms. Wiggins was treated at various medical facilities in Mobile, Alabama, including Mobile Medical Infirmary Medical Center ("MIMC").  *Id*. at ¶ 15. Her injuries resulted in the amputation of both of her legs.  *Id*.

The First Amended Complaint alleges that MIMC knew Ms. Wiggins was covered by Blue Cross and Blue Shield of Alabama, but failed to file a claim for an approximately $58,000 medical bill  *Id*. at ¶ 16.  Instead, MIMC utilized RevClaims to perfect a hospital lien in probate court for the full amount billed to Ms. Wiggins.  MIMC and RevClaims also allegedly refused to provide claim forms to Ms. Wiggins that would have allowed her to submit the charges to her insurer on her own.  *Id*. at ¶s 16, 17.

The First Amended Complaint in the *Wiggins* Action includes sixteen counts based on various Alabama common law and statutory causes of action.  *Id*. at ¶s 19-78.

6

#### (ii.) Three of the Four Underlying Actions Were Filed During AIIC's Policy Period

##### a. *Hargett* Action

After the claims-made policy period for the Landmark Policy ended, Tammy Hargett filed suit in the Circuit Court of Craighead County, Arkansas on July 7, 2016 (the "*Hargett* Action"). *See* [Dkt. 1-2]. Ms. Hargett filed a Class Action Complaint naming RevClaims and various Arkansas-based healthcare providers as defendants. *Id*.

The *Hargett* Action arises from a vehicle collision that occurred in Arkansas on July 27, 2015. *Id*. at ¶ 12. She allegedly suffered neck and lower back injuries. *Id*. at ¶ 13. The Class Action Complaint alleges that Ms. Hargett was an Arkansas Medicaid recipient. Ms. Hargett allegedly assigned her Medicaid benefits to the hospital. *Id*. at ¶s 14, 15.

The Class Action Complaint alleges that the hospital contracted with RevClaims to collect $1,597 billed to Ms. Hargett. *Id*. at ¶s 16, 17. The Class Action Complaint goes on to allege that RevClaims refused to bill Arkansas Medicaid and instead, filed a lien against settlement proceeds Ms. Hargett received from the at-fault driver's auto insurer, State Farm. *Id*. at ¶s 15-19.

The Class Action Complaint includes six counts, including a count for violations of the Arkansas Trade Practices Act, and asks the Court to certify a class action and appoint Ms. Hargett's counsel to represent the class. *Id*. at ¶ 55 – "Wherefore" ¶.

##### b. *Garrison* Action

Approximately six weeks after the *Hargett* Action was filed, Sue Garrison filed a Class Action Complaint in Craighead County Arkansas (the "*Garrison* Action"). *See* [Dkt. 1-4]. Ms. Garrison named RevClaims and a larger group of healthcare providers as defendants than those named in the *Hargett* Action. *Id*.

7

The *Garrison* Action arises from a vehicle accident on August 22, 2013. *Id*. at ¶ 17. Her injuries allegedly included blunt force trauma and severe orthopedic injuries. *Id*. at ¶ 18. Ms. Garrison was treated at a different hospital than Ms. Hargett and was later treated at an infirmary. *Id*. at ¶s 17-19.

The Class Action Complaint alleges that Ms. Garrison was insured by Arkansas Blue Cross and Blue Shield under a plan obtained through the Arkansas health insurance exchange and that Ms. Garrison was an Arkansas Medicaid beneficiary. *Id*. at ¶ 20.

The Class Action Complaint alleges that a physical therapy provider contracted with RevClaims to collect $2,010 billed to Ms. Garrison. *Id*. at ¶s 19, 21-23. The Class Action Complaint goes on to allege that RevClaims refused to bill Arkansas Medicaid and filed a lien against proceeds Ms. Garrison received from the at-fault driver's auto insurer, Nationwide. *Id*. at ¶s 24-25.

The Class Action Complaint includes ten counts, including a count for violations of the Arkansas Fair Debt Collection Practices Act. *Id*. at ¶s 85-173. Unlike the *Hargett* Action, the Class Action Complaint in the *Garrison* Action alleges violations of the Affordable Care Act. *Id*. at ¶s 72-74.

### c. *Pledger* Action

Alicia Pledger filed a Complaint in Mobile County, Alabama in September 2016 (the "*Pledger* Action"). *See* [Dkt. 1-6]. Ms. Pledger filed a First Amended Complaint in March 2017, naming RevClaims and several health care providers as defendants. *See* Exhibit B to Motion.

The *Pledger* Action arises from a September 13, 2015 vehicle accident. *Id*. at ¶ 15. The First Amended Complaint alleges that after Ms. Pledger was treated for her injuries, RevClaims

927467

filed and perfected a hospital lien for $8,658.01, the full amount billed, without billing Blue Cross and Blue Shield of Alabama, Ms. Pledger's medical insurer. *Id.* at ¶ 16.

RevClaims allegedly then submitted the full amount to Ms. Pledger's auto insurer who paid RevClaims $5,000 under the policy's medical payments section. *Id.* at ¶ 17. Upon receipt of the $5,000, RevClaims allegedly submitted the full amount charged to Blue Cross and Blue Shield, who in turn, paid RevClaims $1,761.47, the contractually negotiated reimbursement rate with Ms. Pledger's medical provider. *Id.* at ¶ 18. Despite receiving payment from an auto insurer and a medical insurer, RevClaims allegedly left the hospital lien against Ms. Pledger in place for the full amount charged. *Id.* at ¶ 19.

The First Amended Complaint in *Pledger* includes sixteen counts based on contract and common law claims. *Id.* at ¶s 22-81.

### C. Landmark's Defense in the *Pledger* Action Pursuant to a Reservation of Rights[1]

Despite the fact that the *Pledger* Action was filed after the claims-made policy period of the Landmark Policy, RevClaims provided notice of that action to Landmark and demanded that Landmark provide a defense. Landmark, through coverage counsel, notified RevClaims that it would provide a defense, subject to a full reservation of rights. *See* [Dkt. 1-7]. Landmark's reservation of rights letter notified RevClaims that "the insurance company that issued a policy to RevClaims after the expiration of the Landmark Policy should be defending RevClaims in the Pledger lawsuit." *Id.* at p. 2/6. To date, Landmark has paid $39,082.70 defending RevClaims under reservation of rights in the *Pledger* Action. *See* Exhibit C to Motion. This amount may increase as additional defense costs are incurred in the *Pledger* Action.

---

[1] Landmark is providing RevClaims a defense in the *Wiggins* Action without any reservation of rights since that action was filed during Landmark's policy period.

III.     **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law."

Summary judgment is an appropriate method to decide legal issues. *See Wynne v. United States*, 306 F. Supp. 2d.660, 664 (N.D. Tex. 2004).  This declaratory judgment action involves the interpretation of policy provisions, which are considered legal issues. *See Putman v. Ins. Co. of N. Am.*, 673 F. Supp. 171, 175 (N.D. Miss. 1987) (citing *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir. 1981)).

IV.     **GROUNDS FOR SUMMARY JUDGMENT**

    A.     **The Three Subsequent Actions Are not Related to or Interrelated with the *Wiggins* Action**

The *Wiggins* Action (filed during the Landmark policy period) is distinguishable from the *Hargett*, *Garrison*, and *Pledger* Actions (collectively, "Subsequent Actions") in several key respects and, therefore, is not related to any of the Subsequent Actions under the applicable legal analysis employed by courts in Mississippi and in other jurisdictions.

       (i.) **Related Acts Analysis in Mississippi Supports Conclusion that the Subsequent Actions Are not Related to the *Wiggins* Action**

While the Mississippi Supreme Court has not construed a related acts provision, this Court has addressed an interrelated acts exclusion in a manner that is instructive here.  In *Burkholder v. Underwriters at Lloyd's, London*, No. 1:95cv282GR, 1996 U.S. Dist. LEXIS 21037, at *21-22 (S.D. Miss. July 25, 1996), the Court discussed whether acts committed by the insured in connection with a loan guarantee agreement fell within a policy's related acts

927467

exclusion.  Even though the Court concluded that the facts were not sufficiently developed to grant summary judgment, it agreed with a Pennsylvania trial court's analysis and reasoning that "legally distinct claims 'occurring at different times and for a different purpose,' and which involve 'independent business decisions,' are not interrelated."  *Id.* at *22 (quoting *Anglo-Am. Ins. Co. v. Molin*, 673 A.2d 986, 992-93 (Pa. Commw. 1996)).[2]

Applying this Court's approach in *Burkholder* here, the *Wiggins* Action is not related to or interrelated with the Subsequent Actions.  First, the *Wiggins* Action is different from the *Hargett* and *Garrison* Actions on multiple fronts.

The *Wiggins* Action is legally distinct from the *Hargett* and *Garrison* Actions.  The *Wiggins* Action was filed by one individual and pleads Alabama common law and contract claims.  *See* [Dkt. 1-8]. The "Class Action Complaints" in the *Hargett* and *Garrison* Actions were filed by individuals "on behalf of all others similarly situated" and seek relief based upon federal and/or state statutory provisions governing Medicare and Medicaid and Arkansas common and contract law.  *See* [Dkt. 1-2 and 1-4].

The claims in the *Wiggins* Action are intertwined with a private medical insurer, while the legal claims in the *Hargett* and *Garrison* Actions revolve around government funded medical insurance.  *Id.*  The claims in the *Wiggins* Action are not connected to auto insurance proceeds.  The claims in both the *Hargett* and *Garrison* Actions are based, in part, on allegations that RevClaims secured liens against auto policy proceeds.  *Id.*

The facts in the *Wiggins* Action also occurred at a different time than the facts in the *Hargett* and *Garrison* Actions.  Ms. Wiggins was involved in a motorcycle accident on

---

[2] The Pennsylvania Supreme Court reversed the trial court's decision in *Molin* after concluding that insurers lacked a clear right to relief necessary to support the trial court's preliminary injunction order. *See Anglo-Am. Ins. Co. v. Molin*, 691 A.2d 929, 934 (Pa. 1997).

927467

September 1, 2015 that resulted in the amputation of both of her legs.  *See* Exhibit A to Motion, at ¶ 15.  Ms. Hargett and Ms. Garrison were involved in auto accidents on July 27, 2015 and August 22, 2013, respectively and allegedly suffered different levels of injuries.  *See* [Dkt. 1-2], at ¶s 12, 13; [Dkt. 1-4], at ¶s 17, 18.  The "Class Action Complaints" in these actions were also filed at different times than the *Wiggins* Action Complaint.  *See* [Dkt. 1-8], [Dkt. 1-2], [Dkt. 14].

RevClaims' alleged conduct concerning the liens in the actions also involved independent business decisions.  In the *Wiggins* Action, RevClaims made a decision to perfect a lien against only Ms. Wiggins.  *See* Exhibit A at ¶s 15-18.  In the *Garrison* and *Hargett* Actions, RevClaims filed liens against the auto insurer of each at-fault driver.  *See* [Dkt. 1-2], at ¶ 21; [Dkt. 1-4], at ¶ 27.

Second, while the *Pledger* Action may have more in common with the *Wiggins* Action than the *Hargett* and *Garrison* Actions, the *Pledger* and *Wiggins* Actions are still not related claims pursuant to this Court's analysis in *Burkholder*.  The accidents at issue in the *Wiggins* and *Pledger* Actions occurred on different dates – September 1, 2015 and September 13, 2015, respectively.  *See* Exhibit A to Motion at ¶ 15; Exhibit B to Motion at ¶ 15.  The relevant liens were similarly filed at different times.  *See* [Dkt. 1-6 and 1-8].

The *Pledger* Action and the *Wiggins* Action also involve independent business decisions. RevClaims allegedly opted to pursue medical payments coverage from the plaintiff's auto insurer in the *Pledger* Action; however, there are no allegations related to the recovery of auto insurance proceeds in the *Wiggins* Action.  *See* Exhibit B to Motion at ¶s 17-18; Exhibit A to Motion. RevClaims also allegedly chose to refuse to provide Ms. Wiggins with a claim form to submit charges to Blue Cross and Blue Shield on her own.  *See* Exhibit A to Motion at ¶ 17.  There are no allegations related to a decision to withhold a claim form in the *Pledger* Action.  *See* Exhibit

927467

B to Motion.  Ms. Wiggins's injuries were severe, requiring double amputation, while Ms.

Pledger's alleged injuries were not as extensive.  *See* Exhibit A to Motion, at ¶ 15; Exhibit B to

Motion, at ¶ 15-18.  Finally, in the *Pledger* Action, RevClaims allegedly opted to submit a claim

to Blue Cross and Blue Shield for the full amount billed after filing a lien, while in the *Wiggins*

Action, RevClaims did not submit a claim to Blue Cross and Blue Shield.  *See* Exhibit B at ¶ 18;

Exhibit A at ¶s 16-17.

The *Wiggins* Action and the Subsequent Actions are not related under this Court's

analysis in *Burkholder*.  As detailed above, the *Wiggins* Action is legally distinct from the

Subsequent Actions, the facts in the actions occurred at different times, and involved

independent business decisions that were undertaken for different purposes.

### (ii.)  Related Acts Analysis in Other Jurisdictions Also Supports Conclusion that the Subsequent Actions Are not Related to the *Wiggins* Action

In addition to this Court's discussion in *Burkholder*, courts from other jurisdictions,

including the Fifth Circuit, have reached decisions that lead to the same conclusion – the *Wiggins*

Action and the Subsequent Actions are not related.

In *Federal Deposit Insurance Corp. v. Mmahat*, 907 F.2d 546, 553-54 (5th Cir. 1990)

(applying Louisiana law), the Fifth Circuit held that "related acts" are acts that are "logically or

causally connected."  The court concluded that an attorney's *single motive* to generate fees did

*not* mean *several acts* were related where discrete acts of malpractice resulted in discrete losses

on seven different loans.  *Id.* at 554.  The Fifth Circuit reached this conclusion based, in part,

upon its determination that the acts were not related even though they involved a single motive,

since multiple acts were involved in carrying out that single motive.  *Id.*

The Fifth Circuit's decision and reasoning are instructive here because AIIC's position

appears to be based on the theory that since RevClaims allegedly had a single motive to

maximize recovery for its medical care provider clients, every case involving a lien filed by RevClaims is related.  AIIC's position is misplaced, as an alleged single motive involved in multiple transactions does not equal a single claim for purposes of a related acts provision pursuant to the Fifth Circuit's analysis in *Mmahat*.

In *Ace American Insurance Co. v. Ascend One Corp*., 570 F. Supp. 2d 789, 800 (D. Md. 2008), the court recognized that a subsequent claim is not related to an earlier claim merely because the allegations against the insured stem from common business practices.  In that case, the insured was sued by four individuals that alleged unfair debt management and collection activities related to the sale of debt management plans.  *Id.* at 799.  The same insured faced subsequent investigative proceedings initiated by the Texas and Maryland Attorneys General.  *Id.* at 791.

The insurer argued that the later investigations were based on the same business practices that led to the earlier suit and therefore, the claims were "interrelated."  *Id.* at 800.  The court disagreed, and stated:

> This approach, however unduly broadens the scope of what constitutes Interrelated Wrongful Acts.  To hold that the [earlier] *Jones* claim and the [subsequent] Multi-State Claim are interrelated because they are both based on business practices criticized in [a] Senate Report would preclude coverage for *any* claim against [the insured] based on how it provides business services because the Interrelated Wrongful Acts exclusion would always apply to such claims.

*Id.* (emphasis in original).

The court went on to hold that:

> Because the Multi-State Claim is focused on circumstances and events that occurred subsequent to the alleged Wrongful Acts underlying the *Jones* claim, and because the [Maryland] Subpoena and Texas Demand appear to be related to a broad investigation of [the insured's] marketing consumer counseling business practices rather than focusing on the specific experiences of the *Jones* plaintiffs, the Multi-State Claim does not arise from the same 'fact, circumstance, situation, event,

927467

transaction, cause or series of related facts, circumstances, situations, events transactions or causes,' as the Jones action and is not therefore Interrelated."

*Id.* at 801.

The court's holding in *Ace American* is instructive here.  AIIC's coverage position is based on its argument that the *Wiggins* Action and the Subsequent Actions are interrelated because the actions are based on alleged improper collection practices by RevClaims, despite a number of undisputed differences.  The *Ace American* decision makes clear that a subsequent claim is not related to an earlier claim merely because the claims are based on common business practices of the insured.  As in *Ace American*, AIIC's proposed approach would improperly broaden the scope of what constitutes related acts, and should be rejected.

In *Professional Solutions Insurance Co. v. Mohrlang*, No. 07-cv-02481-PAB-KLM, 2009 WL 321706, at *1, *9 (D. Colo. Feb. 10, 2009), the court addressed whether separate legal services provided by one attorney to the same family were related pursuant to a related acts provision that aggregated claims "temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."  This wording is similar to the definition of Interrelated Wrongful Acts in the AIIC Policy, which requires that acts be "causally or logically related" to be treated as a single claim.

The court explained that "for two things to be logically connected, one must attend or flow from the other in an inevitable or predictable way."  *Mohrlang*, 2009 WL 321706, at *11. The court went on to explain that "for two things to be causally connected, one must bring about the other."  *Id.*  The court concluded that the acts at issue were not related because, among other things, the insured's actions in furtherance of selling the family business did not "in a direct and traceable way" lead to the insured's later breach of fiduciary duties to an individual family member.  *Id.* at *10-11.

The same is true here.  The *Wiggins Action* is neither causally nor logically related to the Subsequent Actions.  The Subsequent Actions did not attend or flow from the *Wiggins* Action in a "direct and traceable way" and nothing about the *Wiggins* Action brought about the Subsequent Actions.  The actions stem from different events, different medical treatment, different liens, and different business decisions.

The Ninth Circuit considered whether claims against an investment firm were related in *Financial Management Advisors, LLC v. American International Specialty Lines Insurance Co.*, 506 F.3d 922 (9th Cir. 2007).  Two investors brought suit against the insured.  The first suit was based on alleged misrepresentations concerning the risky nature of certain investment products, while the second was based on misrepresentation and breach of contract concerning the same investment products.  *Id.* at 924-25.

The same insurer issued polices for successive policy years.  *Id.* at 924.  The policies included related acts provisions pursuant to which "a claim brought under Policy II that arises out of the same or related Wrongful acts as a claim brought under Policy I will be treated as having been brought under Policy I . . . ."  *Id.* The federal district court granted the insurer's motion for summary judgment and ruled that the two suits were related, thus limiting the insured to one policy limit.  *Id.*

The Ninth Circuit reversed and provided the following analysis:

> This case turns on whether the Sitirick and Steinman Claims "arise out of the same or related Wrongful Acts."  We hold that they do not.
>
> The Sitricks and Steinman were unrelated investors, with unique investment objectives.  They were advised at separate meetings on separate dates, according to their unique financial positions.  Indeed, the investment packages ultimately recommended to and chosen by each client were different . . . .
>
> More importantly, some of the Wrongful Acts alleged by the two clients were different.  The district court focused solely on the allegations in the Sitirick and

927467

> Steinman complaints relating to the investment vehicle common to both investors .
> . . .  But, a large part of the Sitricks' case against the FMA Parties was based on
> misrepresentations concerning their equity investments – investments not made by
> Steinman.

*Id*. at 925.  The Ninth Circuit also noted that the two suits were brought by "separate clients with

distinct goals." *Id*. at 926.

Even though the two claims in *Financial Management Advisors* arguably had more in

common than the claims at issue here, the Ninth Circuit still found that the claims were not

related.  In *Financial Management Advisors*, the two suits involved allegations concerning, in

part, the exact same investment product recommended by the same investment firm.  The Ninth

Circuit nonetheless determined that the suits were not related because, among other things, they

were brought by different investors, were based on recommendations made at different times,

and stemmed from factually distinguishable circumstances.  *Id*; *see also Beale v. Am. Nat'l*

*Lawyers Ins. Reciprocal*, 843 A.2d 78, 90-92 (Md. Ct. App. 2004) (suits by siblings arising from

lead paint poisoning in same house were not related because extent of poisoning, injuries,

damages, and attorney's duties owed to each child were distinct).

The same is true of the *Wiggins* Action and the three Subsequent Actions.  The four

actions involve different plaintiffs, accidents that occurred at different times, different underlying

tortfeasors, different underlying injuries, different lien amounts, and different decisions by

RevClaims concerning how to maximize collection for medical providers.  These differences,

and others discussed above, illustrate that the *Wiggins* Action and the Subsequent Actions are not

related for purposes of the related acts provisions of the Landmark and AIIC Policies.

A New York court reached a similar decision in a case involving an attorney who

referred multiple clients to a fraudulent financial services scheme.  In *American Guarantee and*

*Liability Insurance Co. v. Chicago Insurance Co.*, 105 A.D.3d 655, 656 (N.Y. App. Div. 2013),

an insured attorney was sued by four clients who were defrauded by advisors recommended by the attorney.  Two suits were filed during the policy period of one insurer, while the other two were filed during the subsequent policy period of a different insurer.  *Id.*  The insurer for the second policy period sought a ruling that the later claims were related to the earlier claims.  *Id.*

The appellate court reversed the trial court's decision that the suits were related.  *Id.* at 657.  In doing so, the court commented that the purpose of a claims-made policy is to provide the insurer with certainty that when a policy period ends, there is no more exposure for that period.  *Id.* at 656.  This lowers exposure and allows the insurer to pass savings on to policyholders.  *Id.*

The court went on to conclude that the claims were not related because "there are substantial differences between the victims, including the amounts of their claims and the fact that the financial services professional who allegedly committed the fraud was not the same in each circumstance."  *Id.* at 657.

The New York appellate court's reasoning and conclusion apply here.  Landmark issued a claims-made policy with a set end date to end its exposure as of that date.  In addition, as in *American Guarantee*, the alleged victims of RevClaims' allegedly wrongful acts are different in each case; the lien amounts are different in each case; and there is no evidence that the RevClaims personnel handling each lien was the same.  As a result, the *Wiggins* Action and the Subsequent Actions are not related.

### (iii.)   Undisputed Differences Between the *Wiggins* Action and the Subsequent Actions

AIIC's Rule 30(b)(6) designee was recently deposed.  A number of distinctions between the *Wiggins* Action and the Subsequent Actions were addressed during this deposition.  AIIC agreed that:  (1) the alleged tortfeasors in each action are different (*see* Exhibit D to Motion, at p. 36, 37, 43, 48); (2) the alleged injuries in each action are different (*Id.* at p. 37, 43, 49); (3) the

927467

*Wiggins* Action is currently in arbitration, while the Subsequent Actions are not (*Id*. at p. 46); and (4) the medical treatments received in each case are different (*Id*. at p. 37, 42, 43, 48, 49). These admitted differences alone establish that the actions are not related.

In addition, the following differences have not been disputed:  (1) the underlying accidents in each action occurred on different dates; (2) the plaintiffs in the actions are different; (3) the liens in each action were filed at different times; (4); the collection steps allegedly utilized taken by RevClaims is different in each action; and (5) the lien amount is different in each action. When these differences are combined with those AIIC admitted, there is no room for doubt that the *Wiggins* Action is not related to any of the Subsequent Actions, and Landmark is entitled to summary judgment.

Based upon the foregoing, the Court should grant summary judgment in favor of Landmark and find that it has no duty to provide a defense or indemnity to RevClaims with respect to any of the Subsequent Actions, including the *Pledger* Action, which Landmark has been defending, subject to a reservation of rights. Landmark further respectfully requests that this Court enter an order declaring that AIIC must assume the defense of RevClaims in the *Pledger* Action going forward from the date of the order and that Landmark is permitted to withdraw from paying for the defense of RevClaims in the *Pledger* Action once AIIC assumes the defense.

### B.      AIIC's Position Is Contrary to RevClaims' Reasonable Expectations

Policy provisions must be interpreted in accordance with the insured's reasonable expectations. *See Brown v. Blue Cross & Blue Shield of Miss., Inc.,* 427 So.2d 139, 141 n.2 (Miss. 1983)*; Pruett v. Miss. Valley Title Ins. Co*., 271 So.2d 920, 922 (Miss. 1973).  AIIC's

927467

position that the *Wiggins* Action and the Subsequent Actions constitute one related claim runs afoul of RevClaims' reasonable expectations.

Under AIIC's approach, all actions against RevClaims involving in any way its daily professional services would unreasonably be considered related and therefore, treated as a single claim subject to one policy limit.  This would be true regardless of whether the actions involved different claimants, different injuries, different treatments, different medical providers, different contracts, different types of insurance, different liens, or any litany of other differences.  Surely this is not the result an insured would reasonably expect when placing and negotiating professional liability insurance coverage.

AIIC attempts to support its unreasonable position by characterizing the claims asserted in all four underlying actions involving RevClaims' day-to-day business operations as being related.  RevClaims files and enforces medical liens for clients.  All of its business operations naturally share some measure of commonality.  It is untenable to suggest that RevClaims purchased successive professional liability policies from two different insurers with the expectation that all claims made during the subsequent policy period would relate back to the prior policy period and be subject to only the prior policy year's limits merely because the claims generally arise out of it daily professional services.  *See Ace Am. Ins. Co.*, 570 F. Supp. 2d at 800-01 (rejecting insurer's broad interpretation of interrelated wrongful acts provision that would result in *any* claim against insured based on insured's business practices being interrelated).  AIIC's position here would essentially render the AIIC Policy illusory to RevClaims under the circumstances.  *See Taulelle v. Allstate Ins. Co.*, 207 N.W.2d 736, 739 (Minn. 1973) ("[L]iability insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them.").

C.   **AIIC Must Reimburse Landmark for all Sums Landmark Incurred Defending RevClaims in the *Pledger* Action**

Landmark's response to AIIC's Complaint includes a Counterclaim for equitable subrogation.  *See* [Dkt. 10].  Equitable subrogation applies when, in the absence of a governing subrogation agreement, there would be a manifest failure of justice.  *See Hare v. State*, 733 So.2d 277, 282 (Miss. 1999).  Equitable subrogation is appropriate when one party is compelled to pay a sum which should have been paid by another.  *See Am. Surety Co. of N.Y. v. Bethlehem Nat'l Bank of Bethlehem, Pa*., 314 U.S. 314, 317 (1941). This rule of law is "among the oldest" court created equitable doctrines.  *Id.*

Equitable subrogation is applicable here in the event the Court finds that the *Wiggins* Action is not related to the Subsequent Actions.  As demonstrated above, the *Pledger* Action was filed during the AIIC Policy period.  Landmark is not responsible for defending RevClaims in the *Pledger* Action.  However, Landmark has expended sums, under reservation of rights, to defend RevClaims in the *Pledger* Action.  These expenses should have been borne by AIIC, and Landmark is entitled to an order declaring that AIIC must reimburse Landmark for the sums it has incurred to date to defend RevClaims in the *Pledger* Action.

V.   **CONCLUSION**

This Court should grant summary judgment in favor of Landmark since the one underlying action filed during its claims-made policy period (the *Wiggins* Action) is not related to the three other underlying actions filed during AIIC's subsequent claims-made policy period (the Subsequent Actions) for purposes of the related acts provisions in those policies.  Further, to rule that the four actions are interrelated because they involve allegations concerning the insured RevClaims' daily business practices would also be contrary to the RevClaims' reasonable expectations when it purchased the successive claims-made professional liability policies from

21

Landmark and AIIC. Therefore, Landmark respectfully requests that this Court enter an order declaring that Landmark owes no defense or indemnity obligations to RevClaims in any of the Subsequent Actions, including the *Pledger* Action, in which Landmark has been providing a defense, subject to a reservation of rights, and is entitled to reimbursement from AIIC for the costs Landmark has incurred in defending RevClaims in one of the Subsequent Actions (the *Pledger* Action).[3] Landmark further respectfully requests that this Court enter on order declaring that AIIC must assume the defense of RevClaims in the *Pledger* Action going forward from the date of the order and that Landmark is permitted to withdraw from paying for the defense of RevClaims in the *Pledger* Action once AIIC assumes the defense.

This the 5th day of February, 2018.

Respectfully submitted,

**LANDMARK AMERICAN
INSURANCE COMPANY**

**BY: CARROLL WARREN & PARKER PLLC**

**BY: /s/** R. Douglas Morgan
   **R. Douglas Morgan**

**OF COUNSEL:**

Doug Morgan (MSB #100025)
Jacob Stutzman (MSB #101940)
CARROL WARREN & PARKER PLLC
Post Office Box 1005
Jackson, MS 39215-1005
Telephone: 601-592-1010
Facsimile:  601-592-6060
dmorgan@cwplaw.com
jstutzman@cwplaw.com

**ATTORNEYS FOR LANDMARK AMERICAN INSURANCE COMPANY**

---

[3] In the event the Court disagrees and grants summary judgment in favor of AIIC as to the relatedness issue, the Court's ruling would not entirely dispose of this matter, as Landmark raised other coverage defenses in its Answer and Counterclaim, which are not the subject of Landmark's instant Motion and supporting Memorandum of Authorities. *See* [Dkt. 10].

927467

## <u>CERTIFICATE OF SERVICE</u>

I, R. Douglas Morgan, do hereby certify that a true and correct copy of the above and foregoing was served by electronic mail on all counsel of record in this matter.

This the 5th day of February, 2018.

 /s/ R. Douglas Morgan          
R. Douglas Morgan

927467