UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY | PLAINTIFF |
| V. | CIVIL ACTION NO. 3:17-CV-37-DPJ-FKB |
| BRAD WILLIAMS, LLC, ET AL. | DEFENDANTS |

ORDER

The parties in this insurance-coverage declaratory-judgment action have filed cross-motions for summary judgment, seeking a decision on the meaning of a policy's interrelated-wrongful-acts provision. For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment [45] is granted, and Defendants' Motions for Summary Judgment [47, 49] are denied. The Court will, however, certify its Order for interlocutory appeal.

I. Facts and Procedural History

This Order decides which insurance policy covers a series of civil suits filed against Defendants Brad Williams, LLC, and RevClaims, LLC (collectively "RevClaims"). RevClaims "assisted hospitals and healthcare centers nationwide by asserting liens on potential third party recovery sources that could fully satisfy charges and costs incurred by patients." Defs.' Mem. [48] at 2. Defendant Landmark American Insurance Company ("Landmark") insured RevClaims through May 1, 2016, at which point RevClaims swiched its coverage to Plaintiff Associated Industries Insurance Company ("AIIC"). Significantly, both policies were claims-made policies, providing coverage for claims first made against RevClaims during the respective policy periods, no matter when the conduct giving rise to the claims occurred. But the AIIC policy also included an interrelated-wrongful-acts provision, under which related claims were considered made at the

time of the first such claim.  So the question is whether claims filed during the AIIC policy period are related to a claim filed during Landmark's policy period.

The first of the four claims against RevClaims at issue was filed on February 27, 2016—during the Landmark policy period.  In that case, Elizabeth Wiggins sued RevClaims in the Circuit Court of Mobile County, Alabama, related to medical treatment she received following a September 1, 2015 motorcycle accident.  Wiggins says her medical providers wrongfully engaged RevClaims to file a lien against her instead of billing her health insurer, BlueCross BlueShield of Alabama, at its negotiated reimbursement rates.  Landmark is providing RevClaims with a defense in the *Wiggins* case.

The three subsequent suits were filed during the AIIC policy period.  First, on July 7, 2016, Tammy Hargett filed a class-action lawsuit against RevClaims and other entities in the Circuit Court of Craighead County, Arkansas.  Hargett, an Arkansas Medicaid recipient, received treatment for injuries sustained in a motor-vehicle accident in July 2015.  Like Wiggins, Hargett says her medical provider hired RevClaims to file a lien against her for the full amount of its bill rather than submitting the bill to Medicaid at the reduced rate Medicaid had negotiated.  Hargett seeks to pursue claims on behalf of

> [a]ll persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from [the d]efendants [in *Hargett*] for injuries sustained in an incident for which a third party was potentially liable whose subsequent claim against that third party was impaired by the filing of a lien for the full charge of the services.

*Hargett* Compl. [1-2] ¶ 47.  On September 8, 2016, AIIC agreed to defend RevClaims with regard to the *Hargett* case under a full reservation of rights.

RevClaims received a second class-action complaint on August 19, 2016.  Sue Garrison, the named plaintiff, was involved in an August 2013 motor-vehicle accident.  Although Garrison had health insurance through a qualified health plan offered under the Arkansas health-insurance

2

exchange, she says one of her medical providers employed RevClaims to assert a lien against her in lieu of billing her health insurer. Garrison seeks to pursue claims on behalf of a class including

> [a]ll persons who were insured under an Arkansas [qualified health plan] and received covered services from [the defendant] healthcare providers [in *Garrison*] for injuries sustained in an incident for which a third party was potentially liable whose subsequent claim against that third party was impaired by the filing of a lien by [RevClaims] for a charge for services in an amount in excess of the negotiated contract rate with the [qualified health plan] insurer.

*Garrison* Compl. [1-4] ¶ 76.[1] Garrison was represented by the same attorneys that represent Hargett, and AIIC agreed to defend RevClaims with respect to the *Garrison* case under a full reservation of rights.[2]

Alicia Pledger filed the fourth and final lawsuit against RevClaims on September 14, 2016, in the Circuit Court of Mobile County, Alabama. Pledger, a Blue Cross and Blue Shield of Alabama insured, is represented by the same attorneys representing Wiggins in the first-filed action. Like the others, Pledger says her medical provider retained RevClaims to file a lien against her for the full amount of her medical bills rather than billing Blue Cross and Blue Shield of Alabama at its negotiated reimbursement rates. RevClaims tendered the *Pledger* case to Landmark, which agreed to defend RevClaims under a reservation of rights. By letter dated November 8, 2016, AIIC also agreed to defend RevClaims in the *Pledger* action under a full reservation of rights.

---

[1] The quoted language describes one of six proposed sub-classes in *Garrison*. All proposed sub-classes include only individuals insured under Arkansas-insurance-exchange qualified health plans.

[2] The *Garrison* lawsuit has since "been dismissed with a final judgment in favor of RevClaims." RevClaims Countercl. [30] ¶ 16.

After agreeing to defend the *Pledger* action, AIIC discovered the *Wiggins* case and that Landmark had agreed to defend RevClaims in *Wiggins* and *Pledger*. AIIC then concluded that all four claims involved interrelated wrongful acts and therefore were first made during the Landmark policy period. Accordingly, AIIC filed this lawsuit against RevClaims and Landmark on January 18, 2017. It seeks a "declaration that it has no obligation to . . . RevClaims . . . with regard to the" *Wiggins*, *Hargett*, *Garrison*, or *Pledger* cases. Compl. [1] ¶ 57. It also seeks contribution and equitable subrogation for amounts it has already incurred defending RevClaims in the *Hargett* and *Garrison* cases.

Landmark and RevClaims both filed counterclaims against AIIC. Landmark seeks equitable subrogation "for all funds Landmark pays in connection with the defense of RevClaims . . . in the *Pledger* Action." Landmark Countercl. [10] ¶ 19. RevClaims seeks an adjudication "that AIIC is obligated to pay indemnity and provide coverage and defense to the limits of the AIIC policy regarding the *Hargett* and *Garrison* cases." RevClaims Countercl. [30] ¶ 20. Following the close of discovery, the parties filed their cross-motions for summary judgment, which have been fully briefed. The Court has personal and subject-matter jurisdiction.

II. Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

    A.     Summary-Judgment Motions

The three summary-judgment motions all hinge on the meaning of AIIC's interrelated-wrongful-acts clause. Under controlling Mississippi law on contract construction, the Court should "read the policy as a whole, considering all the relevant portions together and, whenever possible, should give operable effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). The Court "must give effect to the plain meaning of [an insurance policy's] clear and unambiguous language." *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 996 (Miss. 2006). Where the terms are unambiguous, the Court construes them as a matter of law. *Lewis v.*

*Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998). Finally, the Court must decide the coverage question by comparing the policy language to the allegations in the underlying complaints. *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 2d 954, 970 (Miss. 2014). The Court therefore begins with the policy language and then applies it to the undisputed facts.

The AIIC Policy provides coverage "FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD." AIIC Policy [1-1] at 11. Where multiple claims are asserted "alleging, based upon, arising out of or attributable to the same Wrongful Act(s) or Interrelated Wrongful Acts," the policy "treat[s them] as a single Claim . . . considered first made during the Policy Period . . . in which the earliest Claim arising out of such Wrongful Act(s) or Interrelated Wrongful Acts was first made." *Id.* at 19.

Claim, Wrongful Act, and Interrelated Wrongful Acts are all defined terms in the policy. The policy defines Claim as "a written demand received by the Insured for monetary Damage which alleges a Wrongful Act." *Id.* at 12. A Wrongful Act is "any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services." *Id.* at 16. Finally, and most significantly, the policy defines Interrelated Wrongful Acts as

> Wrongful Acts that are causally or logically related and include all Wrongful Acts that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the Claim or Claims alleging such acts involve the same or different claimants, Insureds or legal causes of action.

*Id.* at 14.

Turning to the facts, all four lawsuits allege that RevClaims: (1) contracted with healthcare providers to collect payments; (2) asserted liens against the patients (i.e., eventual claimants) rather than their health insurers; and (3) sought reimbursement at the full invoice amount rather than the reduced reimbursement rates the healthcare providers had negotiated with

6

the claimants' insurers. The parties agree that the four lawsuits are Claims alleging Wrongful Acts under the policy. They dispute whether those Claims involve Interrelated Wrongful Acts such that they constitute a single Claim first made before the AIIC policy period.

On this point, AIIC applies the factual Claims to the policy language in a straightforward way. It says the Claims are logically connected and share a nexus of at least one fact, circumstance, or situation because all four lawsuits are premised on RevClaims's business decision to assert liens against patients at the hospitals' full rates.

Landmark and RevClaims obviously reject this construction, but they never address the full policy language. The closest they come is a statement addressing the "causally or logically related" language, in which they say the Claims are not connected in a "direct and traceable way" and that the *Wiggins* case did not bring about the others. Landmark Mem. [50] at 15–16 (quoting *Prof'l Sols. Ins. Co. v. Mohrlang*, No. 07-CV-02481-PAB-KLM, 2009 WL 321706, at *1, *9 (D. Colo. Feb. 10, 2009) (holding that claims were not interrelated), *aff'd*, 363 F. App'x 650 (10th Cir. 2010). But their authority for this argument, *Mohrlang*, is distinguishable because the claims there were based on separate acts of attorney malpractice that were not connected. Here, there is at least a logical connection between cases challenging the same practice. And Defendants do not address the remaining clauses from the Interrelated Wrongful Acts provision in a specific way.

Defendants do offer general statements regarding contract construction and cases where different courts found no interrelated wrongful acts. But those cases take the Defendants only so far. Policy language matters. And many of Defendants' cases address policies with different terms or different facts. For example, Defendants cite *Financial Management Advisors, LLC v. American International Specialty Lines Insurance Co.*, as holding that wrongful acts are not related when "they involve[ ] separate meetings on separate dates, unique investment decisions, and

7

unique financial positions." Landmark Mem. [53] at 6 (citing *Fin. Mgmt. Advisors, LLC*, 506 F.3d 922, 925 (9th Cir. 2007)). But the policy in that case did not define "related" wrongful acts. *See Fin. Mgmt. Advisors, LLC*, 506 F.3d at 924. Moreover, the court noted that separate claimants brought the claims and, "[m]ore importantly, *some* of the Wrongful Acts alleged by the two clients were different." *Id.* at 925 (emphasis added). Here, the AIIC policy requires a nexus with "any" fact or circumstance and expressly includes claims brought by different claimants. AIIC Policy [1-1] at 14.

Defendants' other points are not persuasive for different reasons. Relying on a case from the Fifth Circuit and one from this district, Defendants say that Claims involving independent business decisions tied together by no more than a common goal or business model are not interrelated. *See, e.g.*, RevClaims Mem. [55] at 20 (citing *Fed. Deposit Ins. Corp. v. Mmahat*, 907 F.2d 546, 549 (5th Cir. 1990), *Burkholder v. Underwriters at Lloyd's of London*, No. 1:95-CV-282-G-R, 1996 U.S. Dist. LEXIS 21307 (S.D. Miss. 1996)).[3]

Neither *Burkholder* nor *Mmaht* support Defendants' position on this record, but the Court briefly review those holdings before examining the more specific arguments Defendants draw from them. Starting with *Burkholder*, the district court examined a prior-acts exclusion that was similar to the Interrelated Wrongful Acts provision here.[4] Borrowing from a Pennsylvania case, the *Burkholder* court observed that

---

[3] Defendants argue that AIIC offers no binding authority, but neither do they. *Mmahat* is based on distinguishable Louisiana law, and *Burkholder* is just an unpublished district-court opinion. Neither party cites binding authority, and the Court is not aware of any. Accordingly, this opinion makes an *Erie* guess. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[4] The *Burkholder* policy defined "Interrelated Wrongful Acts" as "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions." *Id.* at *18. That policy did not, however,

legally distinct claims "occurring at different times and for a different purpose," and which involve "independent business decisions," are not interrelated. Nor are claims "involving allegations of wrongdoing of one sort or another" necessarily determinative of the interrelatedness issue when legally distinct claims have been alleged.

*Burkholder*, 1996 U.S. Dist. LEXIS 21307, at *22 (quoting *Anglo-American Ins. Co. v. Molin*, 673 A.2d 986, 992–93 (Pa. Commw. 1996) (internal citations omitted)). The court ultimately held that it lacked sufficient facts to determine whether the claims were interrelated. *Id.* at *23−24.

As for *Mmahat*, the insured attorney (Mmahat) encouraged a bank to make commercial loans that violated lending regulations. 907 F.2d at 553. When the loans defaulted, the FDIC sued Mmahat for malpractice, and the carrier argued that the claims constituted "related acts" under the policy for purposes of the policy's single-claim policy limit. *Id.* The policy did not define "related acts," but the Fifth Circuit construed the term to mean "acts which are 'logically or causally connected.'" *Id.* The Fifth Circuit then found that the desire to generate legal fees motivated each wrongful act, but "a single motive does not make a single act." *Id.* at 554. And because the claims involved "three discrete acts of malpractice"—i.e., different types of wrongful acts—the claims were not interrelated. *Id.*[5]

Landmark and RevClaims say the current case fits neatly within *Mmahat* and *Burkholder* because the Claims arise from a variety of discrete business decisions connected only by a common business model or motive. *See, e.g.*, Landmark Mem. [53] at 4–5. They then identify a

---

include the provision that interrelated wrongful acts include "Claims alleging acts [that] involve the same or different claimants, Insureds or legal causes of action." AIIC Policy [1-1] at 14.

[5] It is worth footnoting that the *Mmahat* panel based its decision in part on Louisiana law that "insurance policies should be construed against the carrier." *Id.* That is not true in Mississippi, where courts construe only ambiguous terms against the insurer. *See U.S. Fid. Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

9

host of factual distinctions among the Claims that produced or flowed from different business decisions. Those distinctions include differing accident dates, lien-filing dates, lien amounts, collection steps, tortfeasors, injuries, medical treatment, rates, insurers, and contracting hospitals. *See id.* at 7−9.

As an initial point, Defendants' argument stretches past *Mmahat* and *Burkholder* and conflicts with the policy language. No matter how many distinctions Defendants offer, the AIIC Policy defines Interrelated Wrongful Acts as existing when there is a "common nexus" of "*any* fact, circumstance, situation, or event." AIIC Policy [1-1] at 14 (emphasis added). AIIC need show only one commonality, even if many distinctions exist.

Defendants also focus on the wrong decisions. Even under *Mmahat* and *Burkholder*, the factual distinctions Defendants cite are not the reasons why RevClaims got sued. Simply put, none of the four Claims seeks damages from RevClaims for business decisions related to the accident dates, lien-filing dates, or the like. The way RevClaims asserted the liens was the common fact, circumstance, or situation that actually premised the four Claims and logically connected them. Or, to use a *Burkholder*-type analysis, the suits were all based on a common business decision, rather than the various peripheral decisions Defendants highlight.

The Second Circuit Court of Appeals faced a similar issue in *Seneca Insurance Co. v. Kemper Insurance Co.*, where Seneca insured USA Equestrian, Inc., the governing body for equestrian sports in the United States. 133 F. App'x 770, 771 (2d Cir. 2005). USA Equestrian denied separate applications from different entities to organize horse shows, both times citing "mileage conflicts." *Id.* at 771–72. The unsuccessful applicants sued, leading to a coverage

dispute over a similar interrelated-acts provision.[6] Like Landmark and RevClaims, the *Seneca* insured highlighted the differences between the two claims, including the absence of a "business connection" between the claimants; the fact that the failed applications were "for shows scheduled on different dates and in different locations"; and the argument that "USA Equestrian's denial of [the] respective applications constituted separate and distinct acts or transactions." *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02-CIV-10088(PKL), 2004 WL 1145830, at *6 (S.D.N.Y. May 21, 2004). But like the AIIC Policy, the *Seneca* policy required only a nexus with "any fact." *Id.* at *5. And because the district court found "numerous logically connected facts and circumstances between" the two suits, it held that the claims were interrelated. *Id.* at *9. The Second Circuit affirmed. 133 F. App'x at 772.

*Mmahat* actually highlights this distinction. There, the shared motivation was not sufficient to relate the claims because the cases were based on different types of wrongs. *Mmahat*, 907 F.2d at 554. In reaching that conclusion, the Fifth Circuit relied on *Eureka Federal Savings & Loan Association v. American Casualty*, where the Ninth Circuit held that claims over discrete loans were not interrelated. 873 F.2d 229, 235 (9th Cir. 1989). The insurance policy in *Eureka* did not define interrelated acts, but the court concluded that the "mere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions made by five directors in connection with issuance of loans to over 200 unrelated borrowers into a single loss." *Id.* Significantly though, the Ninth Circuit then said: "We do not foreclose the possibility, however, that loans to separate borrowers may be aggregated as a single loss in an

---

[6] The *Seneca* policy defined "'Interrelated Wrongful Acts' as 'any and all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.'" 133 F. App'x at 772.

11

appropriate fact situation." *Id.* The Ninth Circuit cited as an example *Atlantic Permanent Federal Savings & Loan Ass'n v. American Casualty Co.*, 839 F.2d 212 (4th Cir.), *cert. denied*, 486 U.S. 1056 (1988). And in that case, the Fourth Circuit found that defrauded claimants presented one loss because their claims all arose from the same home-improvement-loan program. *Atl. Permanent*, 839 F.2d at 219−20.

The Claims against RevClaims are similarly related, and Defendants at least acknowledge that RevClaims's business model is on trial in each case. They say, however, that this is not enough and that no reasonable insured would agree to such terms because it would cap their policy limits. *See* RevClaims Mem. [55] at 27. But again, this argument is not based on the full text of the policy language, and other courts have rejected it.

For instance, in *WFS Financial, Inc. v. Progressive Casualty Insurance Co.*, the insured ("WFS") faced two class-action suits alleging its "*practice* of permitting independent automobile dealers to mark up interest rates based on subjective criteria was discriminatory to minority applicants." 232 F. App'x 624, 625 (9th Cir. 2007) (emphasis added). The question was whether the suits constituted interrelated wrongful acts that would cap policy limits. *Id.* Applying similar policy language,[7] the court held:

> Although the suits were filed by two different sets of plaintiffs in two different fora under two different legal theories, the common basis for those suits was the WFS *business practice* of permitting independent dealers to mark up WFS loans. The harms alleged in the two class action suits are causally related and do not present such an "attenuated or unusual" relationship that a reasonable insured would not have expected the claims to be treated as a single claim under the policy.

*Id.* (emphasis added). Accordingly, the claims were deemed interrelated wrongful acts. *Id.*

---

[7] "'Interrelated Wrongful Acts' are defined as 'Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.'" *Id.*

12

Other "courts have [also] found multiple claims to be sufficiently related where the underlying actions are in service of a 'single plan.'" *Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely Law Corp.*, 162 F. Supp. 3d 1068, 1076, 1078 (C.D. Cal. 2016) (collecting cases and holding that "while the Underlying Actions have been brought by different plaintiffs, they all arise from a single course of conduct"), *aff'd*, 708 F. App'x 374 (9th Cir. 2017); *see also Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1264 (11th Cir. 2000) (holding that claims from different plaintiffs were interrelated where they were based on "same course of conduct"); *Hale v. Travelers Cas. & Sur. Co. of Am.*, No. 3-14-1987, 2015 WL 6737904 (M.D. Tenn. Nov. 4, 2015) (holding that lawsuit by Attorney General against insured alleging same wrongful acts as earlier customer complaints and earlier complaints were interrelated), *aff'd* 661 Fed. App'x 345 (6th Cir. 2016); *XL Specialty Ins. Co. v. Perry*, No. CV 11-02078-RGK JCGx, 2012 WL 3095331, at *8 (C.D. Cal. June 27, 2012) (construing similar policy language and holding that underlying suits from multiple plaintiffs were related where they alleged consistent policy of recklessly issuing high-risk mortgages); *Seneca Ins. Co.*, 2004 WL 1145830, at *9 (concluding claims of two separate plaintiffs sufficiently related where both alleged insured denied applications based on same mileage rule).

As a last note on this point, the AIIC policy goes a step further than most by expressly saying that Interrelated Wrongful Acts includes "Claims alleging acts [that] involve the same or different claimants, Insureds or legal causes of action." AIIC Policy [1-1] at 14. This language obviously broadens the clause, and in this case AIIC has shown a logical nexus with "any fact, circumstance, situation, or event." *Id.* [8]

---

[8] The *Pledger* and *Wiggins* cases share an additional common fact—both suits relate to plaintiffs insured by Blue Cross and Blue Shield of Alabama and the reimbursement rates that carrier negotiated.

Two final issues merit some attention. First, Defendants rely on Brad Williams's Declaration to prove AIIC's construction conflicts with RevClaims's intent. *See, e.g.*, Landmark Mem. [53] at 7 (citing Williams Decl. [47-1] ¶ 17). But Defendants have not argued that the contract was ambiguous. And in those circumstances, Mississippi law looks to the policy's four corners: "Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *One S., Inc. v. Hollowell*, 963 So. 2d 1156, 1162–63 (Miss. 2007).

Second, Defendants say RevClaims's coverage with AIIC would be illusory under AIIC's construction because all claims related to its business would fall under the Landmark policy. *See* Landmark Mem. [50] at 3. The Mississippi Supreme Court has defined "illusory promise" to mean "words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all." *City of Starkville v. 4-Cty. Elec. Power Ass'n*, 819 So. 2d 1216, 1229 (Miss. 2002) (quoting *Krebs ex rel. Krebs v. Strange*, 419 So. 2d 178, 182 (Miss. 1982) (quoting Corbin on Contracts, § 145 at 211 (1952))). Here, AIIC has promised something. If RevClaims receives an unrelated claim, it will be covered. Without taking a deep dive into hypotheticals, the Court could foresee unrelated claims based on acts like asserting liens against the wrong patient. Regardless, RevClaims has not demonstrated that under AIIC's construction its policy would truly "promise nothing." *Id.*

For these reasons, AIIC's motion for partial summary judgment is granted and Defendants' motions for summary judgment are denied.

B.     Interlocutory Appeal

Because no binding authority aided the Court in its construction of the Interrelated Wrongful Acts provision, the Court certifies this Order for interlocutory appeal. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b), which provides,

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

This case meets all three requirements.

First, the meaning of the Interrelated Wrongful Acts provision involves a question of law that controls the outcome of this case. *See Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 585 (5th Cir. 2008) ("The interpretation of an insurance policy is a question of law for the court when the meaning of the terms is clear and unambiguous."). As to whether "there is substantial ground for difference of opinion," this factor may be met "when there is 'an unsettled state of law or judicial opinion.'" *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 814 (E.D. La. 2009) (quoting *In re Babcock & Wilcox*, Nos. 04-302, 03-1065, 2004 WL 626288, at *2 (E.D. La. Mar. 29, 2004)). Here, there is no binding authority on point, and some of Defendants' arguments present close calls. Finally, "an immediate appeal [will] materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). The pending motions sought a ruling on the Interrelated Wrongful Acts provision, but the damages related to that decision remain for further litigation. If the Court of Appeals disagrees with the Court's construction, then it will alter the balance of this case and entitle Defendants to summary judgment. The Court therefore certifies this Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b).

IV.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [45] is granted, and Defendants' Motions for Summary Judgment [47, 49] are denied. Given the certification, the Court removes this case from the June pretrial-conference date and the July trial setting. If any party seeks interlocutory appeal, the Court will at that time stay the case. If not, then the parties should contact the undersigned's Courtroom Deputy to reset the matter for a pretrial conference.

**SO ORDERED AND ADJUDGED** this the 21st day of May, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE